## STERLING P. ROUNDS

### *v.*

## GEORGE C. SMITH *et al.*

CERTIFIED CHECKS —*ultimate liability of the drawer.* A check, though certified and used as money, still retains all the characteristics of an inland bill of exchange. Being such, the drawer is liable for the amount, after notice of presentation and protest for non-payment. The doctrine in the preceding case of *Bickford* v. *The First National Bank of Chicago*, re-affirmed.

APPEAL from the Superior Court of Chicago; the Hon. VAN H. HIGGINS, Judge, presiding.

This was an action of assumpsit, brought in the Superior Court of Chicago, on the following instruments in writing: No. 579. Chicago, September 30th, 1864. Western Marine and Fire Insurance Company: Pay L. Johnson and Co. note or bearer five thousand dollars, and charge account of S. P. Rounds, per Wheeler. Indorsed, " Good, W. S. Smith, Teller." The other instrument was like the above, in all respects, except in amount, this being for three hundred and six dollars and seventy cents, also indorsed, " Good, W. S. Smith, Teller."

The appellant pleaded the general issue, and with it filed the following notice :

" And the plaintiff above will hereby take notice, that the defendant above, on the trial of said cause, will show in evidence and prove as a defense to the plaintiff's cause of action, that, on the 30th day of September last past, he was indebted to the firm of L. Johnson & Co., of the city of Philadelphia, in the sum of five thousand three hundred and six dollars and seventy cents, for which indebtedness this defendant had, before then, to wit, on the first day of April, A. D. 1864, given to said L. Johnson & Co. his promissory notes, bearing date the day and year last aforesaid, for the sum of $5,306.70, in aggregate, which said notes were due in six calendar months from date, and which said notes were then, to wit, on the 30th day of September last, in the bank of said plaintiff, in the city of Chicago, and were then in the possession of said plaintiffs for collection ; that said notes had been forwarded to the said bank by the said L. Johnson & Co., the payees therein named and owners thereof, for collection ; that, on said 30th day of September last, this defendant had large deposits in cash then in the bank of the Western Marine and Fire Insurance Company, in Chicago, which said deposits amounted to a balance in favor of this defendant to the sum of $12,000.50 and upward.

" That, on said 30th of September last, this defendant sent his book-keeper, one W. W. Wheeler, to said Western Marine and Fire Insurance Company's bank with his checks drawn on said bank for the sum of $5,306.70 (in the aggregate), and had

said checks on said bank certified as good by said bank, between the hours of twelve o'clock at noon of said day (the 30th of September), and one o'clock P. M. of said day, the said book-keeper of said defendant drew this defendant's checks upon said Western Marine and Fire Insurance Co., for the sum of $5,306.70 (in aggregate), payable, etc., and took the same to said bank of the Western Marine and Fire Insurance Co., and the said bank certified upon the same, that said checks were good, in usual form and manner used by banks in certifying such checks as good, and said checks were thus in manner and form and in the usual proper form certified to by said W. M. & F. Ins. Bank Co., as good, all of which appeared in writing in and by said checks; that thereupon, and immediately thereafter, and about the hour of one o'clock of said 30th September, the said book-keeper (Wheeler), took the said checks so drawn as above, and so certified as above, to the banking house of the said plaintiffs, in the city of Chicago, and then and there delivered the same to the said plaintiffs in payment of the notes of this defendant, then and there held by the said plaintiffs for collection, to the amount of said checks. That then and there this defendant received from the said plaintiffs this defendant's aforesaid notes so paid in full by said checks.

" That this defendant did then and there give into the possession of said plaintiffs, the aforesaid checks for the sum of $5,306.70 (in the aggregate), so certified as above, in full payment of said notes.

" That the same was so passed by this defendant into the hands of the said plaintiffs as so much cash. And this defendant will further show and prove, that, when the said checks of $5,306.70 (in the aggregate), was so certified as good by the Western Marine and Fire Insurance Co., the said W. M. & F. Ins. Co. charged over to this defendant that amount as actually drawn by this defendant from his deposits in said bank, and that this defendant thus obtaining the said certificate from said W. M. & F. Ins. Co.'s bank as to the character of said checks, and the same were good, the said checks thereby became cash, and that the same were so considered by said plaintiffs as cash.

" And defendant will further show that it was only owing to the fact that said checks were certified as good by said Western Marine and Fire Insurance Co., that the same were accepted by said plaintiffs, thus accepting the said checks, so certified as above, the said plaintiffs accepted said Western Marine and Fire Insurance Co., as the party thereon responsible, and holding to the said plaintiffs, on said checks, and that, by delivering of the said checks of $5,306.70 (in the aggregate), so certified as above by said Western Marine and Fire Insurance Co., that amount of money so designated in said checks, which before that time was held in deposit by the defendant in the said Western Marine and Fire Insurance Co., thereby and from thence became and thereafter was the money of the said plaintiffs, and, by such checks being delivered to said plaintiffs, said sum of $5,306.70, the amount (called for) in said checks described in plaintiff's declaration, was duly assigned, transferred and paid to said plaintiffs as cash in full payment of said notes of this defendant for that amount, and said notes were delivered to this defendant as paid, and that from and after said checks of $5,306.70 (in aggregate), were so received by said plaintiffs (the same being so certified as good by said Western Marine and Fire Insurance Co.), this defendant had no further control over said money therein named then in deposit in said Western Marine and Fire Insurance Co.'s bank, · and no interest to and in the same, and that the same from thence became, and was, and now is, the money and property of said plaintiffs, and said Western Marine and Fire Insurance Co. became, and was, and now is, the depository of the said plaintiffs of said money, and was and now are the bailees of said plaintiffs of said money called for by said checks, and said money called for by said check was, from and after the delivery thereof by this defendant to said plaintiffs, held, kept and deposited in said bank at the sole and only risk of the plaintiffs above, and without any responsibility therefor on the part of this defendant, and this defendant at the trial of said cause will further show and prove that said checks above described, which are the foundation of the plaintiffs' action, are the same and no

others than the checks so certified, etc., delivered to said plaintiffs on the 30th of September last past, in payment of this defendant's notes then held by said plaintiffs, that said checks were delivered into the hands of the plaintiffs between the hours of twelve and two o'clock of said 30th day of September last, and the said plaintiffs wrongfully held and kept said checks without any presentation thereof for payment at the Western Marine and Fire Insurance Co.'s bank, for a long time, to wit: for the space of forty-eight hours after the same became the property of said plaintiffs, and after the same was delivered to the said plaintiffs by this defendant, and that by reason of the keeping and holding of said checks by said plaintiffs without presentation to said Western Marine and Fire Insurance Co., for a long time, became and was and were lost, and became and were valueless, and that, by reason of the delay on the part of the plaintiffs, and their gross and wrongful negligence in holding said checks mentioned in said plaintiff's declaration, and not presenting the same for payment to said Western Marine and Fire Insurance Co.'s bank, the said checks became and were valueless, and the money therein named was lost, and that it was owing to the delay on the part of the plaintiffs, and their negligence in presenting said checks for a long space of time, to wit, for the space of forty-eight hours, that said money called for in said checks was lost, and that the same was lost by the negligence of said plaintiffs, and that, by reason of such negligence on the part of the plaintiffs, in presenting said checks of $5,306.70 (in the aggregate), so certified as good by said Western Marine and Fire Insurance Co., on the 30th of September last, to said bank last named, for the payment of the money therein named, the said plaintiffs fully and absolutely released and discharged this defendant from all liabilities therein, and this defendant became and was discharged therefrom by said negligence of the plaintiffs, and by and through their own wrong the said plaintiffs held, kept and retained said checks from payment when the same became and were due. That, when said checks described in plaintiff's declaration were delivered to plaintiffs by this defendant, there

was great distrust of all banks and moneyed institutions in the
city of Chicago, and the solvency of all banks in said city was
doubted by the business community.

" That at the said time this defendant had a large amount in
deposit in the bank of the Western Marine and Fire Insurance
company, and that said checks were certified as good by said
last named bank, showing such deposit, and the same was so
done for the benefit of plaintiffs, and such checks were taken
and accepted by them only by reason that the same was so
declared good by said bank, and that it became and was the
duty of the said plaintiffs immediately, and, on the same day
the same were delivered to the said plaintiffs by this defendant,
to present said checks to said bank for payment, and all hold-
ing and detaining of said checks after the same were so deliv-
ered to plaintiffs, in the then uncertain condition financially of
the banks and of all moneyed institutions in Chicago, was at
the risk of plaintiffs, and this defendant is not responsible there-
for. That all and singular the plaintiffs were advised of the
premises; and that the said checks, so drawn by this defendant
on the Western Marine and Fire Insurance company, and so
certified by the said bank as good for the sum of $5,306.70 (in
the aggregate), was, from the time the same were so certified,
charged over against this defendant by said Western Marine
and Fire Insurance Company's bank, and that this defendant
had no further control over the said money in said bank, and
that the same money, specified in said check, became, and was
the money of the plaintiffs, and that the said checks, so drawn
by the defendant, and certified as above, are the same checks
specified and set forth in plaintiffs' declaration, and none other,
of all of which said plaintiffs will take notice."

A trial was had by jury who found the issues for the plaintiff,
and assessed the damages at five thousand four hundred and
fifty-two dollars and fifty-two cents. A motion for a new trial
was overruled, and a judgment entered for the amount so found
by the jury, from which the defendant took this appeal to this
court on bill of exceptions filed.

The errors assigned are, first, refusing to give instructions for

defendant numbered 1, 3, 4, 7; second, refusing instructions for defendant numbered 5 and 6; third, in giving the first and second instructions for the plaintiff; fourth, in giving instructions marked "court's instruction;" fifth, in refusing to allow the defendant to prove what was the effect of certifying checks as "good" by the bank on which they are drawn; sixth, in refusing a new trial.

On the trial, the appellant proved the facts, substantially, as set forth in his notice, except that there was no proof that the amount of the checks was actually charged in account against the drawer. W. S. Smith, the teller, testified, that he had, in his own mind, by a mental operation, charged the checks in account against the drawer but had not charged them on the books of the bank, or noted it on the checks.

It was proved, that, on the day of the date of the checks, they were taken to appellees, then doing business as bankers, and delivered to them as payment of the promissory notes of appellant then held by them for collection. The notes were delivered over to the appellant by appellees, duly stamped by them as paid. The notes belonged to L. Johnson & Co., of Philadelphia. On the day of the receipt of these checks, and the delivery of his notes to appellant, the appellees remitted the amount of the same to Philadelphia by their own drafts on the east. The delivery of the checks to appellees, and the surrender of appellant's notes by them, took place at about two o'clock in the afternoon of Friday, September 30th. The appellant had, before that time, paid notes on him held by appellees by certified checks, they being unwilling to take any other kind. The Western Marine and Fire Insurance bank kept open all day Friday, but did not open for business after that day. Appellees held these checks until the next day, when they attempted to present them, during business hours, but the bank was closed, whereupon they gave notice to appellant, and demanded payment of him.

The appellant now contends, that, by the drawing and delivery of the checks by him to appellees, certified as "good" by the bank upon which they were drawn, the sum of money

named in the checks, and then on deposit to the credit of appellant, became, from the time of the delivery of the checks, transferred and assigned to appellees; and, from the time of such delivery, the money named in the checks and then on deposit in that bank, and thence removed, was the money of appellees, as holders of the checks, and not the money of appellant; and the appellees thereby became depositors of the amount of the checks in the bank, and they only could control or use those funds.

The instructions given by the court for the plaintiffs below were as follows:

"If the jury believe, from the evidence in this cause, that the plaintiffs received of the defendant, on the afternoon of the 30th of September, 1864, the two drafts or checks given in evidence, in order to take up two promissory notes of the defendant, of amounts corresponding with the respective amounts of said checks, and the plaintiffs then and there held said notes for an eastern bank for the mere purpose of collection, and, at the time of receiving said checks, plaintiffs delivered up to defendant his said notes, and on the same day remitted the amount thereof to the party from whom they received said notes; and if the jury further believe, from the evidence, that, immediately after the commencement of banking hours on the next day after receiving the said checks, and soon after ten o'clock, A. M., of the first day of October, 1864, the plaintiffs' teller took said checks to the banking office and usual place of business of the Western Marine and Fire Insurance Company, named as drawee in said respective checks, for the purpose of presenting the same at said bank for payment, but was unable to obtain payment of said checks, or either of them, by reason that said bank was closed and had stopped payment, and that plaintiffs immediately, and on the same day last aforesaid, gave the said defendant notice of the said matters and the non-payment by said bank of said checks, then the defendant is liable to the plaintiffs for the amount specified in said checks, and the jury will find for the plaintiffs accordingly, with interest on

the amount at the rate of six per centum per annum after the first of October, 1864."

"Where all the parties reside in the same place, the presentation of a check drawn on a bank and received in the usual course of business is deemed within a reasonable time if made during banking hours of the next day after it was so received, and it is the same whether the check be certified by the bank to be good or not, so far as the drawer of the check is concerned. If the jury, therefore, believe, from the evidence in this case, that the checks in evidence in this cause were taken by plaintiffs in the usual course of business, and were sent to the bank on which they were drawn, during banking hours of the next day after they were received, and the said bank had before then, and has since, been closed, and had and has stopped business, then the court instructs the jury that such effort to present the checks is equivalent to a presentation of the checks, and is within reasonable time to charge the defendant upon the said checks."

The appellants had asked the following instructions of the court, which were refused:

"The defendant asks the court to instruct the jury, that, if they believe, from all the circumstances of the case, that the checks in question [so certified to as good by the Western Marine and Fire Insurance Company] were received by the plaintiffs in payment of the notes of the defendant (Rounds) then given up, and were so received as absolute payment of said notes, then the law is with the defendant, and plaintiffs cannot recover in this action."

"And, in making up their minds on the question of whether the checks were received as absolute payment or not, the jury may consider all the circumstances of the case, all the acts of the parties at the time the checks were given, and the notes of the defendant given up, the stamping of the notes as paid by plaintiffs, and the acts of plaintiffs in sending their checks upon the east in payment of said notes, in fact."

"The jury are instructed, that if, from the evidence, they believe that the plaintiffs received the checks in question as so much money, and that they gave up the defendant his promissory notes for the amount called for in said checks, duly stamped as "paid," and if they further believe that they, the plaintiffs and defendant, at the time the notes were so given, so understood, that the checks were received by the plaintiffs as cash or as absolute payment of said notes, then the law is with the defendant, and the plaintiffs cannot recover in this suit."

This cause was heard originally in this court at the April Term, 1865, and decided in favor of the appellant; but a reargument was ordered by the court, which was had at the present April Term, 1866.

Mr. E. W. EVANS, for the appellant.

Messrs. McALLISTER, JEWETT & JACKSON, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This case, in all its important features, is the same as the case of *Bickford* v. *The First National Bank, ante,* and must be decided in the same way.

This case was tried by a jury, and the questions arising on the record come up on exceptions of appellant to instructions.

As in that case, so in this, there was no proof that the amount of the check was actually charged in account against the drawer, thereby depriving him of the control of it so that he could not use it for any purpose. W. S. Smith, the teller, testified that he had in his own mind, by a mental operation, charged the check in account against the drawer, but had not charged it on the books of the bank, or noted it on the check, consequently the funds were not actually placed beyond the control of the drawer. The teller made no memorandum of it, except "in his head," where it seems he kept such transactions.

This is an important fact, and places the certified check on no higher ground than one uncertified. This, we have fully discussed in Bickford's case.

We were of opinion, when this cause was before us at the last term, that a certified check was something more than an acceptance of an inland bill of exchange, since the certificate gives the check greater currency, enabling it to pass from hand to hand as money, and being by a bank issuing its own notes as currency, more confidence would be inspired, than by a bill of exchange drawn on an individual and accepted. The impress of such a bank in good credit on a check that it was "good" and would be good at any reasonable time thereafter, when presented for payment, made the check a more efficacious medium of payment and aid in commercial exchanges than a mere bill of exchange though accepted. We were of opinion, that, by certifying the check and charging it up in account against the drawer, it was a question for the jury, whether the check was accepted by the appellees as cash, and credit given to the bank certifying the check, and the appellant thereby discharged, and this on the mistaken understanding that the check had been charged against the appellant by the bank, whereby he had parted with all control over the funds.

More reflection and a close examination of the authorities, which are referred to in Bickford's case, have satisfied us, we were in error, and that the check, though certified and used as money, still retained all the characteristics of an inland bill of exchange. Being such, the drawer is liable for the amount, after notice of presentation, and protest for non-payment, all which appellant received in due form.

We are satisfied none of the instructions asked by appellant containing views different from those herein, and in Bickford's case, expressed, should have been given. The judgment must be affirmed.

*Judgment affirmed.*