CASE 22—PETITION ORDINARY—JUNE 22.

# Smith & Campbell vs. Jones.

APPEAL FROM NELSON CIRCUIT COURT.

A check on a bank is constructively payable on demand, requires no acceptance or notice of dishonor, implies a guaranty that the fund drawn on, is at its date, or should be when presented, in bank, and should not be withdrawn before presentation for payment. While the fund is in bank to the drawer's credit, his check transfers to the payee or holder the exclusive right to that fund. Unlike a bill of exchange, a check does not require "due diligence;" and apparent laches in presenting it for payment does not exonerate the drawer, unless by unreasonable delay he has suffered loss, and then he is entitled to relief *pro tanto.* (*Story on Promissory Notes, sections* 487–8–9 12, *and notes; Murray vs. Judah,* 6 *Cowan's Reports,* 490.)

BUSH & SHIVELL, E. E. McKAY,      For Appellants,
CITED—

*Story on Bills of Exchange, secs.* 311, 367 *to* 369, 280, 308, 461.

*Story on Promissory Notes, secs.* 487, 489, *and notes,* 492, 498, *and notes.*

Smith & Campbell vs. Jones.

6 *Cowan's R.*, 490 ; *Murray vs. Judah.*
10 *Wendell*, 304.
13 *Wendell*, 540.
6 *Hill (N. Y.)*, 174.·
4 *Kent's Commentaries, p.* 549, note *, 4th ed.

WILLIAM JOHNSON,                                    For Appellee.·

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

The appellants sued the appellee on the following check drawn at *Corinth,* Mississippi:

"APRIL 12th, 1862.

"Citizens' Bank of Louisiana, pay to Smith & Campbell, or order, nineteen hundred and twenty-five dollars. $1,925.

"D. W. JONES."

On which the following credit is indorsed :

"Received on this check one hundred and twenty-five dollars, April 15th, 1862.

"SMITH & CAMPBELL."

The petition alleged that the consideration of the check was an equivalent loan of money, and that the check was presented at the said bank on the 13th of January, 1863, for payment, and was protested because the drawer had no funds in bank.

The appellee's answer alleged that, as mere friend and gratuitous bailee of the appellants, he had received from them in the city of Orleans about eight thousand dollars in Confederate bonds on trust, to exchange them for gold; that, having exchanged all except one thousand nine hundred and twenty-five dollars, and transmitted the gold to the appellants, he drew the check for that balance, which the parties intended as a mere transfer or restoration to the appellants of that residual amount of these Confederate bonds remaining unexchanged—

that, with proper diligence, they might have presented the check for payment before the capture of Orleans early in May, 1862, by the Federal army and navy, and that if they had done so, the check would have been paid—that, having left the remaining bonds with his friend *Marchand*, to keep for him, he wrote to him immediately after drawing the check to deposit the bonds in the Citizens' Bank of Louisiana, which he had promptly done, and that the deposit, about three months afterwards, was, without the appellee's knowledge or authority, withdrawn by Marchand, to prevent spoliation, and that the bonds having then become almost worthless were in good faith exchanged for a draft for twelve hundred dollars on Bullock, a son of Judge Bullock, of Louisville, Kentucky, which the appellee considered the property of the appellants, and tendered to them as such.

*McFerrin*, a witness for the appellants, proved a conversation between the appellee and himself, as agent for the appellants, in which the appellee made statements substantially corresponding with all the essential allegations in his answer, except the exchange of the bonds for Bullock's draft ; and, as the whole conversation is evidence, as well statements as admissions, those statements were competent testimony.

And other witnesses testified that, until the capture of Orleans early in May, 1862, the appellants, who were within the Confederate lines, and friendly to the Confederate cause, might have safely gone from Corinth, or an intermediate point, to Orleans, in forty-eight hours—those places and all the interjacent country being, until the capture of the city, in the possession of the Confederate army.

On these facts the circuit court dismissed the petition, and we cannot reverse that judgment.

Although the check imported money due on a commensurable consideration, yet the intrinsic credibility of the answer, fortified as it is by the accredited statements to McFerrin, is deemed sufficient to show that the nominal amount in Confederate paper belonging to the appellants was the only consideration and the only fund drawn on. The check was constructively payable on demand; required no acceptance or notice of dishonor; implied a guaranty that the fund drawn on was, at its date, or should be when presented, in bank, and should not be withdrawn before presentation for payment. And, while the fund was in bank to the drawer's credit, his check transferred to the appellants the exclusive right to that fund. Unlike a bill of exchange, a check does not require " due diligence;" and apparent laches in presenting it for payment does not exonerate the drawer, unless by unreasonable delay he has suffered loss, and then he is entitled to relief *pro tanto*. (*Story on Promissory Notes*, sections 487–8–9–92, *and notes; and Murray vs. Judah*, 6 *Cowan's Repts.*, 490.) But the evidence authorizes the deduction, that, for nearly a month after the date of the appellee's check, the appellants, if only reasonably provident and diligent, might have presented the check and received the amount of it. And it is evident, that when—nine months after its date—the check was presented for payment, the Confederate bonds, then the property of the appellants, were almost worthless, and could not be drawn from the bank or exchanged, or circulated within the Federal lines consistently with national policy or law.

The resulting loss does not appear to be ascribable to the culpable negligence of the appellee, who seems to have observed good faith, and, as a bailee without any compensation, was responsible only for gross negligence

or fraud, but must be attributed to the conduct of the appellants themselves. It seems to this court, therefore, that it would be unreasonable and unjust to hold such a bailee responsible to such bailors for the amount of the unavailing check, or for any amount whatever. Even if the appellees should be entitled to recover any thing, it would not exceed the value of the bonds when the check was presented, and that value must then have been quite inconsiderable. Possibly *Marchand* or the bank, or both, may be responsible to the appellants for the apparently unauthorized and illegal withdrawal of the deposit of the Confederate bonds. And, as the appellee is estopped by his answer to deny that the appellants are entitled to the draft on Bullock, they may obtain that or whatever may have been received on it. But this is an ulterior matter neither litigated nor involved in this case.

As it appears to this court, from the foregoing consideration of facts and principles, that the appellants, by their own conduct, have exonerated the appellee from all liability to them on his check, the judgment of the circuit court dismissing their petition is affirmed—Judge HARDIN not sitting.