## No. 5189.

### MUTUAL NATIONAL BANK vs. JEAN ROTGÉ ET AL.

The fact that a check on a bank has been *certified* by the bank, at the request of the indorsers, before its delivery to the holder, will not discharge the indorsers. Such a certification arouses no implication that the holder intended to release the indorsers and look only to the bank.

Protest is not essential in order to hold the indorsers. It is sufficient if the holder of the paper inform one of the indorsers, on the day the paper matures, that the drawee has failed to pay it, and said indorser in turn informs the preceding indorser the day after.

APPEAL from the Sixth District Court, parish of Orleans. *Saucier, J. T. H. Kennedy*, for plaintiff and appellee. *Sambola & Ducros*, for defendants.

HOWELL, J. This is a suit against the drawer and indorsers of a check, the case being submitted to us only as to the indorsers. The defense is that they are discharged by the *laches* of the plaintiff in not having the check duly protested, and notifying defendants, and by plaintiff's acceptance of the direct promise of the drawee, the New Orleans National Banking Association, evidenced by its certification of said check.

The facts are that on the fourth of October, 1873, Theodore Gollain drew his check on the New Orleans Banking Association for seven hundred and forty dollars in favor of Paul Castaing, who indorsed it, and gave it as an accommodation loan to Jean Rotgé, by whom it was also indorsed. The two indorsers in blank went together to the bank on which it was drawn, and had it certified in the words "through Clearing-

House," and in this condition Rotgé, the last indorser, delivered it about noon of the same day to the plaintiff bank in payment of his note for same amount. On the sixth of October, the next legal day, the plaintiff presented it at the Clearing-House, but, no one appearing to represent the drawee, it was presented to the latter without avail. Rotgé was informed of these facts on the same day, and he informed the preceding indorser on the next day.

We think it clear that the plaintiff was not guilty of any *laches*. Nor do the facts show that the indorsers were released by any acceptance of the promise of the drawee shown by the certification. The check was so certified and indorsed when delivered to the plaintiff, who used due diligence to notify the last indorser, and the notice to the next was given in a reasonable time. There is no act of the plaintiff showing any release or any intention to release the indorsers. The certification was made at their request, and before delivery to plaintiff. The fact that the drawee certified it and thereby became unconditionally bound to the holder did not affect the liability of the indorsers, if notified in due time of the dishonor. The indorsers, however, rely upon the following authority: "By the acceptance or certification of the check, an entirely new engagement is entered into by the bank with the holder and his legal transferees. This engagement is simply and unconditionally to pay to him or them the sum named in the check on demand. The check ceases in fact to be a check, and becomes a promise to pay. Accordingly, the rules which govern a check no longer govern this instrument. * *. The check itself is, in its new form, strictly evidence of a deposit to the credit of the holder. All the rules about presentment for payment at once fall to the ground. The holder need no longer regard the condition of the drawer's account or balance with the bank. The bank is bound to withhold enough from the depositor's funds to meet the demand of the holder, whenever it may be made." Morse on Banks and Banking, p. 282.

This doctrine, if accepted as fully correct, does not go to the extent of releasing the indorsers under the circumstances in this case from liability to the plaintiff. Mr. Parsons in his work on Notes and Bills, vol. 2, p. 75, says: "The law of demand and notice has no application between the bank and the holder; but may still have as between the holder and the drawer." And in the case of Willits vs. Phœnix Bank, 2 Duer, 121, cited by both the above authors in this connection, it was said: "The sole and manifest object of the maker or holder of a check in requiring it to be certified is to enable him to use it as money; that is, to pass it to others with the same certainty of its acceptance, as affording the same security to a holder; and the bank, in complying with the request, must know that such is its object. It is, therefore, certain that a

bank, by certifying a check, means to give a currency and value that would not otherwise belong to it, and this additional value, it seems to us, can only be given by interpreting the certificate as an unconditional promise of payment, whenever payment shall be demanded; otherwise, a certified check would be of no more use or value than an ordinary check, and would afford no greater security to a holder. The certificate is a useless form, unless it means, not merely that the check was good when certified, but that it will be good when presented for payment."

It is apparent that these authorities refer only to the liability of the certifying bank, and we are left to general principles and the rules of commercial law and jurisprudence to settle the liability of the indorsers to the holders. We are acquainted with no principle which releases the indorsers from liability to the holder when the latter uses the diligence required of him in such case.

Judgment affirmed.