## John Allen et al.

### v.

## Max Kramer et al.

<div style="float:right">2 205<br>66 558</div>

1. INLAND CHECK—PRESENTMENT FOR PAYMENT—REASONABLE TIME. —The law is well settled that all drafts, whether foreign or inland bills, must be presented to the drawee within a reasonable time, and in case of non-payment, notice must be given promptly to the drawer to charge him; but what is a reasonable time will depend upon the circumstances of each case. In this case, appellees, residing in Chicago, drew their check in favor of appellants, on bankers in New York, and sent the same to the branch house of appellants in New York, from whence, on the same day, it was forwarded to appellant's principal place of business in Philadelphia, where it was deposited in a bank, and on the same day forwarded by the bank to New York for collection through another bank, and presented for payment on the same day it was received. *Held*, that the check was presented within a reasonable time.

2. FAILURE TO PRESENT IN DUE TIME.—Want of due presentment or notice of dishonor of a check, does not discharge the drawer unless he has suffered some injury or loss thereby.

3. SIGNATURE OF DRAWER—DRAWEE BOUND TO KNOW.—The law makes it the duty of the drawees to know the signature of their d_ ositors, the drawers, and the holder of such check is not bound to furnish proof of its genuineness, nor is he bound, after once presenting the check for payment, to present it a second time after the drawees have taken time to verify the signature.

4. PRESENTMENT—REFUSAL—NOTICE OF DISHONOR.—A presentment of a check while the drawees are solvent; a refusal of payment upon grounds for which the holder was in no sense responsible, followed by proper notice and protest, is sufficient to fix the liability of the drawers, and such liability is in no way affected by the fact that the drawees subsequently became satisfied of the genuineness of the signature, and would have paid the check had it been again presented before their failure.

APPEAL from the County Court of Cook county; the Hon. MASON B. LOOMIS, Judge, presiding

Messrs. CHETLAIN & GREGORY, for appellants; that the holder of a bill or check has a reasonable time in which to present it for payment, and as to what is a reasonable time, cited 1 Daniels on Negotiable Instruments, 448; 1 Parsons on Notes, 338; Mellish v. Rawdon, 9 Bing. 416; Nat. Newark Banking Co.

v. Second Nat. Bank, 63 Pa. St. 404; Taylor v. Wilson, 11 Met. 44; Aymar v. Beers, 7 Cow. 705; Montelius v. Charles, 76 Ill. 303.

The holder does not lose his remedy against the drawer by reason of non-presentment, unless the drawer is injured by reason of the insolvency of the drawee in the interval: Story on Prom. Notes, § 493; Springfield F. & M. Ins. Co. v. Tincher et al. 30 Ill. 399; Little v. Phœnix Bank, 2 Hill, 425; Howes v. Austin, 35 Ill. 396; Heartt v. Rhodes, 66 Ill. 351; Stevens v. Park, 73 Ill. 387; Harbeck v. Craft, 4 Duer, 112; Planters' Bank v. Merritt, 7 Heisk. 177.

The burden of proof is upon the drawer to show not only non-presentment, but consequent injury to himself: Bradford v. Fox, 38 N. Y. 289; Syracuse, etc. R'y Co. v. Collins, 3 Lansing, 29.

A bank is bound to know the signature of its depositors: 2 Daniel on Negotiable Instruments, § 1,654; Weisser v. Denison, 10 N. Y. 68; First Nat. Bank of Quincy v. Richer, 71 Ill. 439.

If appellees have sustained injury by reason of appellants' laches, they are discharged from liability on the original indebtedness only to the extent of their loss by the insolvency of the drawees: Story on Promissory Notes, § 492; 2 Daniel on Negotiable Instruments, 514; Smith v. Jones, 2 Bush. 103; Pack v. Thomas, 13 Smedes & M. 11; Bradford v. Fox, 38 N. Y. 289; Henshaw v. Delors Ind. Sup. Ct.

Instructions must be based on the evidence: Weaver v. Rylander, 55 Ill. 529; Holcomb v. Davis, 56 Ill. 413; St. L. A. & T. H. R. R. Co. v. Manly, 58 Ill. 300; T. P. & W. R. R. Co. v. Patterson, 63 Ill. 304; Stein v. Kendall, 1 Bradwell, 103

There was no dispute or contradiction as to the facts in the case, and it was the duty of the court to have pronounced the law and defined the rights of the parties to the controversy: Tefft v. Ashbaugh, 13 Ill. 602; Davis v. Hoxey, 1 Scam. 406; House v. Wilder, 47 Ill. 510; Quinn v. I. C. R. R. Co. 51 Ill. 495.

Messrs. TENNEYS, FLOWER & ABERCROMBIE, for appellees; that a check is an assignment of so much money on which the

payee may sue the drawer, cited Union Nat. Bank v. Oceana Co. Bank, 80 Ill. 212.

The check was drawn in this State, and its validity and interpretation must be determined by the laws of this State, the mailing of the same here being a delivery: McKinney v. Rhoades, 5 Watts, 343.

BAILEY, J.   This suit was brought by appellants, to recover the amount of a bank check given them by appellees, in payment of certain indebtedness from appellees to them.   The facts upon which the liability of appellees is sought to be established, are substantially as follows:

On the 27th day of November, 1877, the date of the check, appellees were merchants, doing business in Chicago, as co-partners, under the firm name of Kramer Brothers.   At the same time, appellants were engaged as co-partners, under the firm name of J. & B. Allen, in the business of manufacturing and dealing in hosiery goods, having their manufacturing establishment and principal place of business at Philadelphia, and also having a store in New York, where some of their goods were sold.   Appellants both resided in Philadelphia; one of them, however, having charge of their business at that place, and the other of that at New York.   The only bank account kept by the firm was with the National Bank of Germantown, and all their banking business was done at that bank.

The merchandise for which the indebtedness in question accrued, was purchased of appellants, either at their New York house, or of traveling agents in the west.   It appears that customers who bought goods at the store in New York, usually corresponded with appellants at that place, and made remittances to them there.   Accordingly, all the correspondence between appellees and appellants, had been carried on with the New York House, and all the remittances made by appellees prior to sending the draft in question, were sent to New York.

The balance due from appellees to appellants on the 27th day of November, 1877, being $1,006.71, appellees drew their check for that amount in favor of appellants, on Messrs. Greenebaum

Bros. & Co., bankers, of New York city, with whom they then had a deposit, and sent the same by mail to appellants at New York. This check was received by the New York partner on Friday, November 30th, and was by him, on the same day, forwarded to the other partner at Philadelphia, where it was received Saturday, December 1st. It was thereupon immediately indorsed by the Philadelphia partner, and deposited in the National Bank of Germantown, and on the same day forwarded by that bank to the Central National Bank of New York, for collection. At about one o'clock in the afternoon of Monday, December 3d, the check was presented by a messenger of the last named bank, at the counter of Messrs. Greenebaum Bros. & Co., for payment. The messenger was known at the banking house of Greenebaum Bros. & Co., but the payment of said check was refused, upon the ground that the bank teller to whom it was presented was in doubt as to the genuineness of the signature of Kramer Brothers thereto.

It appears that the teller before refusing payment, took the check and showed it to David S. Greenebaum, a member of the firm, remarking that he did not recognize the signature, and asked him what to do. Mr. Greenebaum told him to return the check and he would ascertain by telegraph, whether the signature was genuine. This conversation, however, does not appear to have been in the presence of the messenger, nor is there any evidence tending to show that he was in any way advised of Mr. Greenebaum's purpose to telegraph for information in relation to the signature. On the same day, after banking hours, the check was again presented to Greenebaum Bros. & Co. by the paying teller of the Central National Bank, for the purpose of protesting it if not paid. He was informed that there was something wrong with the signature, but does not appear to have been notified of any intention to inquire as to its genuineness. The check, not being paid, was duly protested, and notice of protest given to appellees.

The evidence shows that on the first or second day afterwards, Mr. Greenebaum received information that the signature was genuine. The check, however, was not again presented for payment, nor does it appear that the Central National Bank, or

other holders of the check, had any notice of the result of Mr. Greenebaum's inquiries, or of his readiness to pay the check. On the 6th day of December, Messrs. Greenebaum Bros. & Co. suspended payment and became insolvent, and so have ever since remained. · At the time the check was drawn, and from thence up to the time of the failure, appellees had on deposit with Greenebaum Bros. & Co. an amount of money sufficient to pay the check.

On the trial, the jury rendered a verdict for appellees, and the court below, after overruling appellant's motion for a new trial, rendered judgment against them for costs. Appellants now ask for a reversal of the judgment, on the ground that the verdict was against the evidence, and that the court erred in its charge to the jury.

Let us first consider whether the evidence charges appellants with laches in the matter of duly presenting the check for payment. The law is well settled that all drafts, whether foreign or inland bills, must be presented to the drawee within a reasonable time, and in case of non-payment, notice must be given promptly to the drawer to charge him. But what is a reasonable time under all the circumstances, is sometimes a most difficult question. The general doctrine is, each case must depend on its own peculiar facts, and be judged accordingly. Montelius et al. v. Charles, 76 Ill. 303; Stevens v. Park, 73 Id. 387. In the absence of any qualifying circumstances, the holder should present the bill to the person or bank on which it is drawn, if within reach of such drawee, within business hours of the day next succeeding the receipt of the paper, and give notice of the dishonor to the drawer. Bickford v. First National Bank of Chicago, 42 Ill. 238; Strong et al. v. King, 35 Id. 9. This rule applies to bank checks as well as to bills of exchange, strictly so called. But in case of either, the rule is modified to a limited degree by the relations of the parties, their circumstances, manner of doing business, and facilities for making prompt presentation of the paper for payment.

We think the transmission of the check in question by appellants to the bank in Philadelphia, was fairly justified by the

circumstances of the case, and that there was no unreasonable delay of presentment for payment. It should be remembered that appellant's principal business operations were carried on at Philadelphia, and the only bank with which they were in the habit of transacting business, was located at that place. In that bank it is to be presumed the funds of the firm were kept, and it appears to have been their custom, in accordance with the ordinary and well known usages of business men, to collect their bills receivable through the agency of their own bank. It is not pretended that in the transmission of the check to Philadelphia, and its subsequent presentation for payment through that channel, there was any unnecessary delay. In point of fact, it seems to have been transmitted to Philadelphia and back in the shortest time possible, and the transmission involved a delay of only about one-half of a business day, of which appellee could, in any event, have a right to complain. Had the New York partner of appellant's firm retained the check in his hands, he would have been entitled to all of Saturday to present it for payment. It was actually presented on Monday, the next business day, at about one o'clock P. M. We think, under all the circumstances, the delay was not unreasonable, and that consequently, the presentment for payment was made in apt time.

But even were this otherwise, we fail to see how, under the circumstances disclosed by the evidence, appellees can be held to be discharged from their liability to appellants. The law is well settled that want of due presentment or notice of dishonor of a check does not discharge the drawer, unless he has suffered some loss or injury thereby. Heartt v. Rhodes, 66 Ill. 351; Howes v. Austin, 35 Id. 296; Stevens. v. Park, 73 Id. 387. Tyndall, C. J., lays down the rule as follows: "In the case of a check, the holder does not lose his remedy against the drawer by reason of non-presentment, within any prescribed time after taking it, unless the insolvency of the party on whom it is drawn has taken place in the interval." Alexander v. Burchfield, 7 Man. & G. 1061.

The only ground on which payment was refused when the check was presented on Monday, being that the teller was in doubt as to the genuineness of the signature of the drawers,

how can it be said that presentment on the previous Saturday would have been attended with any different result? If the teller was unable to recognize the signature on Monday, he, manifestly, would have been equally in doubt as to its genuineness on Saturday, and payment would have been refused in one case the same as in the other.

The law made it the duty of the drawees to know the signatures of their depositors, the drawers. First National Bank of Quincy v. Ricker, 71 Ill. 439. Appellants were not bound to furnish proof of its genuineness, nor were they bound after once presenting the check for payment, to present it a second time after the drawees had taken time to verify the signature. A presentment of the check while the drawees were still solvent, a refusal of payment upon grounds for which appellants were in no way responsible, followed by protest and notice, fixed the liability of the drawers, and such liability is no way affected by the fact that the drawees subsequently became satisfied of the genuineness of the signature, and would have paid the check had it been again presented before their failure. Had appellants or their agents been notified of the willingness and readiness of the drawees to make payment, possibly a different rule might apply. It might then have been their duty, as an act of good faith to appellees, to send a messenger a second time to the drawees, and obtain the money. As the record stands, however, there is an entire absence of evidence, showing or tending to show, that appellees were prejudiced in the least, in any of their legal rights, by a delay from Saturday till Monday, in presenting the check for payment. We think the jury in finding a verdict for appellees found directly against all the evidence in the case, and for that reason the judgment must be reversed.

The learned judge who tried the case in the court below, adopted a somewhat different view, both of the law and the evidence, from that above indicated, and instructed the jury accordingly. We do not deem it necessary to review the instructions at length. Upon another trial the instructions will be made to conform to the principles laid down in this opinion.

The judgment is reversed and the cause remanded.

<div align="right">Judgment reversed.</div>