144 So. 81

## DEAL v. ATLANTIC COAST LINE R. CO.

4 Div. 653.

Supreme Court of Alabama.

June 25, 1932.

Rehearing Granted Nov. 3, 1932.

534

P. B. Traweek, of Elba, for appellant.

A. H. Arrington, of Montgomery, for appellee.

KNIGHT, J.

Suit on check by payee against drawer. The Code furnishes no form for such a suit. A check is, in every legal sense, a bill of exchange. As stated in the case of Atwood v. Benson, 215 Ala. 72, 109 So. 361: "There

is no form prescribed for suit by the payee against the maker or drawer of a check. In some respects the action is more analogous to a suit on a note or bond by the payee against the maker than to an action by an indorsee of a bill of exchange. The general rule is everywhere recognized that payment is an affirmative defense."

The check imports a consideration, which, however, may be impeached by plea. Code, § 7662. There is nothing averred in the complaint to change the rule that the check imports a consideration, and therefore the defense of want of consideration could only be raised by plea. Likewise a check is a contract within itself, and imports an obligation or engagement on the part of the drawer to pay the same, if, on due presentation to the bank, payment is refused.

The complaint avers that the check sued on was duly presented and payment refused. The complaint was sufficient, and not open to any ground of demurrer interposed to it, unless it be that notice of nonpayment was not given the drawer, and this we will presently consider. Atwood v. Benson, supra; Dowling et al. v. Parker, 221 Ala. 63, 127 So. 813; Martin v. Foster, 83 Ala. 213, 3 So. 422; Bolling v. McKenzie, 89 Ala. 470, 7 So. 658.

Was it incumbent upon the payee to aver that notice of the dishonor was given in a reasonable time to the drawer? There is a contrariety of holding on this question, but whether failure to give notice of the dishonor of the check would penalize the payee to the extent of discharging the drawer from all liability on the instrument, or only to discharge him from liability to the extent of the loss occasioned by this failure, must be determined by a proper construction and interpretation of the provisions of the Negotiable Instrument Law now found in chapter 321 of the Code (section 9029 et seq.), and the rules of the Law Merchant, which are by express provisions of the statute made applicable in cases not provided for in the Negotiable Instrument Law.

Section 9114 of the Code provides: "Notice of dishonor; to whom given.—Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

Section 9134 of the Code provides:

"Notice to drawer when not required.— Notice of dishonor is not required to be given to the drawer in either of the following cases:

"(1) Where the drawer and the drawee are the same person.

"(2) Where the drawee is a fictitious person, or a person not having capacity to contract.

"(3) Where the drawer is the person to whom the instrument is presented for payment.

"(4) Where the drawer has no right to expect or require that the drawee or acceptor will honor the instrument.

"(5) Where the drawer has countermanded payment."

Section 9203 of the Code provides: "A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this chapter applicable to a bill of exchange payable on demand apply to a check."

Section 9204 of the Code provides: "A check must be presented for payment within a reasonable time after its issue, or the drawer will be discharged from liability thereon *to the extent of the loss caused by the delay.*"

By section 9214 of the Code it is provided: "In any case not provided for in this chapter, the rules of law merchant shall govern."

These several provisions of the Negotiable Instrument Law stand in pari materia, and must be so construed as to give each a field of operation, to effectuate the legislative purpose.

But for section 9204 a literal interpretation of sections 9114 and 9203 would lead to the conclusion that failure to give notice of dishonor would discharge the drawer.

By providing specifically for checks, and the penalty exacted for the failure to present the same for payment within a reasonable time, it seems clear that it was the legislative purpose to withdraw this class of bills of exchange from the category of negotiable instruments dealt with under section 9114; and we are thus remitted to section 9204 to ascertain the penalty to be imposed upon a holder or payee who fails to make presentation within a reasonable time, and to the law merchant, in virtue of section 9214 of the Code, as to the penalty for the payee's failure to give notice of the dishonor within a reasonable time. We say the law merchant because, while section 9204 fixes the penalty to be visited upon the payee for failing to present the check within a reasonable time, this section omits to provide for the failure to give notice of the dishonor, and section 9214 provides that, in any case not provided for in the Nego-

tiable Instrument Law, the rules of the law merchant shall govern.

Under section 230 of Bigelow on Bills and Checks, which discusses the subject of "Liability of drawer of checks, and notice of dishonor," we find the following note: "But as the purpose of notice is to enable the drawer to protect his interest when his check has been dishonored, and since presentment may be made, and hence the dishonor may occur, at any time within the statute of limitations (say, five years) subject only to the drawer's right to recoup his actual loss, the importance of notice seems too slight for the statutory penalty of complete discharge for its omission. So unreasonable an interpretation is to be avoided if possible. Presentment and giving of notice are so closely connected, in purpose and performance, that, in the light of the rule of Law Merchant, and of Negotiable Instrument Law, § 186, discharging the drawer of a check only to the extent of his loss in case of non-presentment, the courts might well conclude that section 89 (our section 9114) requiring notice to the drawer was meant to apply to the drawer of a bill of exchange only; and that a literal interpretation of section 89 as applicable to the drawer of a check is not within the meaning and spirit of the two sections read together. See Judge Brewster's comment, Brannon, Negotiable Instrument Law (3d Ed.) ubi supra. There is manifestly no sound reason for changing the former rule. The case should be treated as casus omissus, and governed by the unwritten rule, under section 196. * * * It is equally clear that if notice be required, it is notice of 'dishonor'; and dishonor cannot occur until presentment made." Negotiable Instrument Law, § 89.

Judge Freeman, in his excellent notes in the case of Holmes & Sons v. Briggs & Drum, 17 Am. St. Rep. 804, says: "As a general rule, the drawer or indorser of a check is not discharged from liability by the holder's omission, delay, or laches in presenting it for payment within a reasonable time, and in not giving notice of dishonor or nonpayment, unless such drawer or indorser has suffered some actual loss or damage through the failure of the bank or otherwise, and then he is only discharged pro tanto." Stewart v. Smith, 17 Ohio St. 82; Henshaw v. Root, 60 Ind. 220; Compton v. Gilman, 19 W. Va. 312, 42 Am. Rep. 776; Cox v. Boone, 8 W. Va. 500, 23 Am. Rep. 627; Cogswell v. Rockingham, etc., Bank, 59 N. H. 43; Bell v. Alexander, 21 Grat. (Va.) 1; Cork v. Bacon, 45 Wis. 192, 30 Am. Rep. 712; Pack v. Thomas, 13 Smedes & M. (Miss.) 11, 51 Am. Dec. 135; Allen v. Kramer, 2 Ill. App. 205; Griffin v. Kemp, 46 Ind. 172; Smith v. Jones, 2 Bush (Ky.) 103; Purcell v. Allemong, 22 Grat. (Va.) 739; Morrison v. McCartney, 30 Mo. 183.

It is said in Daniel on Negotiable Instruments (5th Ed.) § 1587: "But there is an important distinction as to the extent of the legal consequence of neglect and delay in presentment and notice, between bills and checks. It is true that the indorsers of such instruments stand on the same footing in reference to the effect of delay, or failure in making presentment, or giving notice. They are absolutely and entirely discharged, if presentment be not made within a reasonable time, and due notice given. But the drawer of a bill stands on a different footing from the drawer of a check. In the case of a bill of exchange, negligence, in respect to presentment or notice, absolutely discharges the drawer. But the drawer of a check is regarded as the principal debtor, and the check purports to be made upon a fund deposited to meet it. And the negligence of the holder in not making due presentment, or in not giving him notice of dishonor, does not absolutely discharge him from liability, unless he has suffered some loss or injury from such negligence, and then only to the extent of such loss or injury. He is at most entitled only to such presentment and notice as will save him from loss. Were it otherwise, the drawer would profit by a neglect which could do him no harm."

In Allen v. Kramer, 2 Ill. App. 205, the court, in accord with the foregoing from Daniel, says: "The law is well settled that want of due presentment or notice of dishonor of a check does not discharge the drawer, unless he has suffered some loss or injury thereby." In support of the above pronouncement, the following authorities are listed: Heartt v. Rhodes, 66 Ill. 351; Stevens v. Park, 73 Ill. 387; Griffin v. Kemp, 46 Ind. 173; Henshaw v. Root et al., 60 Ind. 220; Gregg v. George, 16 Kan. 546; Spink & Keyes Drug Co. v. Ryan Drug Co., 72 Minn. 178, 75 N. W. 18, 71 Am. St. Rep. 477.

In the case of Williams v. Braun, 14 Cal. App. 396, 112 P. 465, 467, in discussing section 3255 of the California Code, which is substantially in the same terms as our Code, § 9204, the court, speaking through Cooper, P. J., said: "The presentment of the check was the first and material thing, and the giving of notice was only a secondary matter. * * * The evident spirit and meaning of section 3255 is that delay in presentment or in giving notice of dishonor exonerates the drawee, only to the extent of the injury he has suffered thereby. This construction is evidently in accord with justice, and with the law which has been long established in regard to a notice of dishonor of checks."

In the case of Exchange Bank, etc., v. Sutton Bank, 78 Md. 577, 28 A. 563, 564, 23 L.

538

R. A. 173, in speaking of the duty of the holder of a check to give notice of its dishonor, the court said: "Under such circumstances, it was their clear duty to give notice of the nonpayment, to the drawer. * * * A failure, however, to notify the drawer of the nonpayment of a check, does not always discharge him from liability. It must also be shown that he has either actually or presumptively suffered some loss or injury therefrom. Daniel, Neg. Inst. § 1587, * * * Bull v. First National Bank of Kasson, 123 U. S. 105, 8 S. Ct. 62 [31 L. Ed. 97]."

The author of Brady on Bank Checks, in discussing the necessity of "notice of dishonor," as required by section 89 (our section 9114) of the Negotiable Instrument Law, says in note under section 102: "There is an exception with reference to the drawer of a check to the effect that the drawer is not discharged by a delay in giving notice unless it appears that he has been injured as a result of the delay."

In our own case of Industrial Trust, Title & Savings Co. v. Weakley, 103 Ala. 458, 15 So. 854, 855, 49 Am. St. Rep. 45, it is said: "And the drawer is not discharged by the laches of the holder in not making due presentment of the check, or in not giving due notice of its dishonor, unless he has suffered some loss or injury thereby as by the intermediate failure of the bank, and then only pro tanto. 3 Am. & Eng. Enc. Law, 215, and authorities cited; Morse, Banks, 421d; 2 Daniel, Neg. Inst. § 1587; Boone, Banking, §§ 172, 181."

In the case of Hendricks v. Jefferson County Savings Bank, 153 Ala. 636, 45 So. 136, 14 L. R. A. (N. S.) 686, which was a case in which a collecting bank was sued for negligence in not collecting a check, which was deposited with it for collection, and in not giving notice of nonpayment until the bank on which it was drawn had become insolvent and had suspended payment, it was held that the agent bank was only liable for such an amount as the depositor may have lost thereby, *and the duty was on the depositor* to allege and prove his loss.

And in our recent case of Marx & Co. v. Bankers' Credit Life Ins. Co., 224 Ala. 249, 139 So. 421, 425, it is held:

"It is undoubtedly the true rule that the payee of a check is under the duty to the drawer to make due presentment, and laches in the performance of this duty, resulting in loss or damage to the drawer, to the extent of such loss or damage would operate a satisfaction of the original debt. Lowenstein v. Bresler, 109 Ala. 326, 19 So. 860; Hendricks v. Jefferson County Sav. Bank, 153 Ala. 636, 45 So. 136, 14 L. R. A. (N. S.) 686; Morris v. Eufaula Nat'l Bank, 106 Ala. 383, 18 So. 11; Section 9204, Code.

"But under such circumstances, it is said in Hendricks v. Jefferson County Sav. Bank, supra, page 642 of 153 Ala., 45 So. 136, 137, that: 'In accordance with the weight of authority, and especially in view of the positive position taken by our own court, we hold that the measure of damages is the *actual loss sustained, and that it is a part of the plaintiff's case to allege and prove the amount of loss.*' " (Italics supplied.)

In 5 Ruling Case Law, page 516, it is said: "As a general rule, the drawer of a check is not discharged from liability by the holder's delay, or laches in giving notice of dishonor or nonpayment, unless such drawer has suffered some actual loss or damage through the failure of the bank or otherwise, and then he is only discharged pro tanto."

We also find the principle stated broadly in Brannon's Negotiable Instrument (5th Ed. by Bentel, and which is just from the press), that: "In an action against the drawer of a check which had not been presented within a reasonable time, the burden is on the defendant to show that he has suffered loss by such failure to present the check. McDaniel v. Mackey, 40 Ga. App. 517, 150 S. E. 439; Sims v. Hunter, 44 Idaho, 505, 258 P. 550; Rosenbaum v. Hazard, 233 Pa. 206, 82 A. 62 [38 L. R. A. (N. S.) 255, Ann. Cas. 1913A, 1291]; Farmers' Oil & Gas Co. v. Betts, 50 S. D. 78, 208 N. W. 402; German American Bank v. Wright, 85 Wash. 460, 148 P. 769, Ann. Cas. 1917D, 381, semble; Cox v. Citizens' State Bank, 73 Kan. 789, 85 P. 762; Ryckman v. Fox Film Corp., 188 Cal. 271, 205 P. 431; Contra, Dehoust v. Lewis, 128 App. Div. 131, 112 N. Y. S. 559, semble."

And, in an action against the drawer on the original debt for which a check was given, it was held that the burden is on the defendant to show loss to him resulting from the negligence of the payee in failing to give prompt notice of dishonor of the check. Morris-Miller Co. v. Von Pressentin, 63 Wash. 74, 114 P. 912.

■■ In an effort to reach a proper conclusion as to the effect of the failure to give timely notice of the dishonor of a bank check, we have endeavored to review the conflicting authorities thereon, and, as a result of our survey and consideration of the same, we are forced to the conclusion that the drawer of a check who would escape liability thereon, by reason of negligence in either the presentation of the same or for failure to give timely notice of the dishonor, must, by affirmative plea, set up the alleged negligence of the payee —whether for failure to present within a reasonable time or for failure to give timely notice—and that the same resulted in loss to him. Confessedly, he owed the debt for which, and in evidence of which, the check was given, and he should not be allowed to escape liability thereon, except to the ex-

tent of his loss or injury. Such a holding seems to be in consonance with the spirit and manifest purpose of section 9204, which deals specifically with checks as contradistinguished from other bills of exchange.

We are therefore of the opinion that the complaint sufficiently states a cause of action, and was not subject to any grounds of demurrer directed thereto, and the court properly so held.

The appellant filed a special plea—numbered 4 in the record—wherein he averred that he tendered his personal check to the plaintiff's agent, drawn on the Elba Bank & Trust Company in payment of one car of fertilizer shipped to him, bill of lading attached, on the date of the alleged check sued on, and plaintiff's agent refused to accept said check, unless the same was certified by the bank, but agreed to accept it if defendant would have it so certified by an officer of the bank, and the plea avers that defendant did have the check certified, and that plaintiff did then and there accept said certified check as payment for all that was due on account of said fertilizer, etc.

It appears without dispute from the evidence that the Southern Cotton Oil Company, at Montgomery, Ala., shipped over the plaintiff's railroad a car of fertilizer consigned to its own order at Elba, Ala., with directions to notify the appellant, J. J. Deal. Deal, on receipt of notice of the arrival of the fertilizer at Elba, proposed to give the plaintiff's station agent there his check for $429.56, "representing one hundred and twenty-five per cent. of the value of the invoice," and thereby to take up the shipment. The plaintiff's agent declined to accept Deal's check, "unless he would have it certified by an officer of the bank." The appellant had this done, and then presented it to the plaintiff's said agent, and received the shipment. The plaintiff's agent testified that the check was given the railroad company as security against claim in case the original bill of lading was not presented to him, or to the agent of the company; that the amount of the deposit was to be returned to the said Deal, when he surrendered the original bill of lading to the agent. It also appears without dispute that the check was duly presented for payment, but not paid, as the drawer bank failed.

It also appears without dispute that the appellee had, before the suit was brought, paid the Southern Cotton Oil Company the sum of $345.56 in settlement for the fertilizer. The defendant offered no testimony.

The defendant insisted in the court below, and renews the same insistence here, that the check was improperly admitted in evidence, as there was a variance between the check sued on and the one offered in evidence, in that the check offered in evidence was a certified check, certified to be good "when properly indorsed" by the bank upon which drawn.

If there was any error, which is not conceded, in admitting the check in evidence, bearing across its face the words, "Good when properly indorsed, W. M. Farris, Ass't Cashier," the error was rendered harmless when considered in connection with the evidence of plaintiff's station agent, who testified with reference to his acceptance of the check.

■ The rule of law (embodied in section 9206 of the Code) which prevails when a check is given in payment of a debt, and the payee, instead of having it cashed, takes a certification thereof by the bank upon which it is drawn, does not prevail in a case like the one now under consideration. Here the appellant, Deal, had the check certified. He was, in this case, still bound to make the check good. There was no substitution of the bank for Deal as the sole debtor.

■ While section 9206 provides that, if the holder of a check procures it to be accepted or certified, the drawer and all indorsers are discharged from liability thereon, the rule is otherwise where the drawer, before delivery, procures the acceptance or certification. A certified check does not, of its own force and vigor, operate as a payment, except in the case provided for by the statute. This proposition seems to be well supported by the adjudged cases, and has the approval of Mr. Tiedeman in his work on Commercial Paper. Born v. First National Bank, 123 Ind. 78, 24 N. E. 173, 7 L. R. A. 442, 18 Am. St. Rep. 312; Bickford v. Bank, 42 Ill. 238, 89 Am. Dec. 436; Rounds v. Smith, 42 Ill. 245; Mutual Nat. Bank v. Rotge, 28 La. Ann. 933, 26 Am. Rep. 126; Andrews v. Bank, 9 Heisk. (Tenn.) 211, 24 Am. Rep. 300; Larsen v. Breene, 12 Colo. 480, 21 P. 498; Tiede-Commercial Paper 456; 5 R. C. L. p. 523.

It therefore follows that, under the undisputed testimony, the drawer was not relieved of liability, because of the certification of the check in question by the drawee bank, and the court properly so held.

■ The defendant was not entitled to the affirmative charge in his behalf as requested, but, to the contrary, the plaintiff was entitled to the general charge, and which was given at its written request. This action of the court, therefore, was without error.

■ The appellant, in brief, but in brief only, complains that the jury awarded plaintiff an amount in excess of its real damages, if any, but the record fails to show that this question was raised in the court below on motion for new trial. We are therefore unable to review the question whether the damages awarded were excessive or not.

We have examined each error assigned upon the record, and find no errors of which

appellant can complain, and the judgment of the court below must be affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and THOMAS, JJ., concur.