[Civ. No. 14785. Second Dist., Div. Three. June 8, 1945.]

MARIE ROFF, Respondent, v. JOSEPH T. CRENSHAW, Appellant.

Phil F. Garvey for Appellant.

Lawton D. Champion for Respondent.

DESMOND, P. J.—This is an appeal from an order denying defendant's motion for a change of venue. Suit was filed in the county of San Luis Obispo upon a check reading as follows:

> "90-1379 MILLBRAE BRANCH 90-1379
> BANK OF AMERICA No. 209
>
> National Trust & Association
> Savings
> Millbrae, Calif. Aug 16 1944
> PAY TO THE
> ORDER OF Marie Roff $500 00/
> Five Hundred and No/xx DOLLARS
> Jos. T. Crenshaw "

It was alleged in the complaint that the defendant made, executed and delivered the check in the county of San Luis Obispo; that on the day following its date it was presented for payment to the Millbrae Branch of the Bank of America and was refused payment upon a written order executed by the defendant stopping the payment thereof. To this suit the defendant filed a demurrer at the same time that he moved that the action be transferred to the county of San Mateo, in which county Millbrae is located. In a supporting affidavit the defendant alleged that he had been a bona fide

resident of the county of San Mateo for more than five years last past and that "the alleged check mentioned and described in plaintiff's complaint on file herein, was in fact payable and to be performed in the City of Millbrae, County of San Mateo, State of California." The motion for change of venue was based upon these allegations and shortly after the hearing thereon the motion was denied and the demurrer sustained, fifteen days allowed for amendment.

Appellant predicates his appeal upon the statement "that there is no allegation by the plaintiff in the complaint or by way of affidavit that the *contract was in fact entered into* in San Luis Obispo County, and in view of the contract in writing which was to be paid and performed in San Mateo County it cannot be *deemed* that the contract was to be performed in San Luis Obispo County." (Italics by appellant.)

To this the respondent replies that the allegation of the complaint that the check was made, executed and delivered in San Luis Obispo County is equivalent to saying that the contract was in fact entered into in that county, and then relies upon section 395, Code of Civil Procedure, to support the order refusing to transfer the case to San Mateo County. Referring to that section we find that when "a defendant has contracted to perform an obligation in a particular county, either the county where such obligation is to be performed, *or in which the contract in fact was entered into,* or the county in which the defendant, or any such defendant, resides at the commencement of the action, shall be a proper county for the trial of an action founded on such obligation, and the county in which such obligation is incurred shall be deemed to be the county in which it is to be performed unless there is a special contract in writing to the contrary." The words which we have italicized in this excerpt were added to section 395 in the year 1939 and, in our opinion, form a sufficient basis for the decision of the court.

Although the appellant in his opening brief states that "In the instant case there is a special contract in writing (the check sued upon), that the contract is to be paid and performed at Millbrae, California (San Mateo County)," and elsewhere, as we have shown, by direct quotation refers to the instrument in question as a contract in writing, he makes the statement in his closing brief that "A check is not a con-

tract and the laws governing contracts can have no application to checks since the enactment of the Negotiable Instruments Law," and also argues that "The check in question here is not a contract but is a negotiable instrument expressly distinguished from contracts by the Negotiable Instruments Law, and since Section 395, Subsection 1, of the Code of Civil Procedure relates specifically to *contracts*, it does not govern the instant case and has no application here." (Italics by appellant.) But according to the Restatement of the Law of Contracts, at page 8, "Contracts are classified as formal or informal; as unilateral or bilateral," and "Formal contracts are (a) Contracts under seal, (b) Recognizances, (c) Negotiable instruments." While it is true that title XV of the Civil Code of California (adopted in the year 1917), embodies the so-called Uniform Negotiable Instruments Law, there is nothing under that title to indicate that a bill of exchange or a check, such as was given in this case, is not a contract. Section 3265a of the Civil Code, under title XV, defines a check as a "bill of exchange drawn on a bank payable on demand," and continues, "Except as herein otherwise provided, the provisions of this title applicable to a bill of exchange payable on demand apply to a check." In the treatise on Bills and Notes, 7 American Jurisprudence 788 (published in 1937 long after title XV was adopted by our Legislature), we find the statement that "A bill, draft, check, or note is a contract, and the fundamental rules governing contract law are applicable to the determination of the legal questions which arise over such instruments," and at page 790 the statement is made that "Bills of exchange, drafts and checks are all substantially in the same form. They are, in substance, orders drawn by one person upon another directing the latter to pay a certain sum of money to a third person or order, or to a third person or bearer."

The court, in *Deal* v. *Atlantic Coast Line R. Co.* (1932), 225 Ala. 533 [144 So. 81, 86 A.L.R. 455], says (at p. 457, 86 A.L.R.) that "A check is a contract within itself, and imports an obligation or engagement on the part of the drawer to pay the same, if, on due presentation to the bank, payment is refused." (See, also, Civ. Code, § 3141, under the title "Negotiable Instruments".) No case to which we have been cited is governed by any different principle and the same article

to which we have already referred has this to say at 8 American Jurisprudence 237: "The drawer of a check impliedly represents that he has funds or credits available for its payment in the bank upon which it is drawn. In the absence of an express stipulation negativing or limiting liability, the drawer of a check admits the existence of the payee and his then capacity to indorse and engages that on due presentment the check will be paid according to its tenor and that if it should be dishonored and the necessary proceedings on dishonor are duly taken, he will pay the amount thereof to the holder or to any subsequent indorser who may be compelled to pay it. The drawer is not liable to pay the check until the holder has demanded and failed to obtain payment from the drawee bank, unless there are circumstances which dispense with the necessity of presentment. . . . There seems to be no doubt as to the right of the payee of a check, upon its nonpayment, to sue the drawer either upon the check itself or on the original consideration [citing *Camas Prairie State Bank* v. *Newman*, 15 Idaho 719, 99 P. 833, 21 L.R.A.N.S. 703, 128 Am.St.Rep. 81]." In the annotation attached to the report of this cited case in 21 L.R.A.N.S. at page 704, we find that in *Henshaw* v. *Root*, 60 Ind. 220, it was expressly held that "the payee of a bank check, upon payment being refused, and notice being given the maker, may maintain an action thereon against the latter, it not being necessary to resort to an action on the original consideration; as the natural inference from the giving of the check is that it is in payment of a debt due from the maker to the payee, and, when demand has been refused and notice of its nonpayment given, the maker is as much liable upon it as he would be upon a dishonored bill of exchange." The case, *Byrd Printing Co.* v. *Whitaker Paper Co.* (1911), 135 Ga. 865 [70 S.E. 798, Ann. Cas. 1912A 182], mentioned in footnote to section 1748, Daniel on Negotiable Instruments (7th ed.), page 1791, involved an action based upon a check which plaintiff had received from defendant. The suit was held immune to attack under a general demurrer and the court, upon appeal, stated (p. 800) "A check is a contract, and not a 'mere request upon a third party to pay money.' (Citing case.) Like a promissory note, it imports a consideration, and none need be alleged in the petition in an action to collect the amount due

thereon. Inasmuch as the check was made payable to the Whitaker Company, and the petition alleged that the check had been presented for payment and the same refused, no further showing of its right to sue thereon was necessary.''

Under the authorities cited, it is clear that the instrument sued upon in the instant case is a contract and, since it was entered into in the county of San Luis Obispo, that is a proper county for the trial of the action. The court rightly denied the motion for the change of venue and its order to that effect is hereby affirmed.

Shinn, J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied July 6, 1945.