33 So.2d 390

### SCOTT v. STATE.

### 5 Div. 251.

Court of Appeals of Alabama.

Jan. 13, 1948.

Maurice F. Bishop, of Birmingham, and Jacob A. Walker, of Opelika, for appellant.

A. A. Carmichael, Atty. Gen., and Wm. N. McQueen, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The appeal in this proceeding is properly before this court; it affirmatively appearing the provisions of Section 369, Title 15, Code of Alabama, have been fully complied with.

The facts involved are without material conflict, and as appears from the transcript of the record and statement of the evidence are substantially as follows:

James E. Scott, the appellant (petitioner), was arrested under a governor's warrant issued by the Governor of the State of Alabama on a requisition of the Acting Governor of the State of Georgia, the said warrant, reciting that James E. Scott was charged with "the crime of Misdemeanor (bad check)" a duly certified copy of which indictment accompanied the said requisition.

Scott sued out a writ of habeas corpus addressed to the Circuit Court of the Fifth Judicial Circuit of Alabama seeking his discharge from the sheriff of Lee County, Alabama, who made the arrest and from the judgment of the Court remanding him to the custody of the sheriff for the purpose of being delivered to the authorized agent of the State of Georgia Scott gave due and legal notice of, and brings this appeal.

The undisputed testimony in this case is that Scott, a young man nineteen years of age was engaged in buying and selling automobiles. He issued checks in payment for automobiles purchased by him and received checks for automobiles sold by him. On March 4, 1947, he bought an automobile in Atlanta, Georgia, and issued a check, in the amount of $2,500, payable to the order of Dean Ledbetter. The check was drawn on the Farmers National Bank of Opelika, Alabama. Ledbetter, the payee of the check in question, retained his check and delayed presenting same for payment for two weeks and until March 17, 1947.

When the check was presented on March 17, 1947, it was returned by the Farmers National Bank with the notation on the check "Drawn against uncollectible funds."

The check had been issued in payment of a 1947 Pontiac, which Scott had purchased at public auction in Atlanta, Georgia, from Dean Ledbetter. On March 4, 1947, Scott had on deposit in the Farmers National Bank of Opelika the sum of $5,324.16. On March 14, 1947, he had on deposit in said bank the sum of $8,369.02. As late as March 20, 1947, Scott had on deposit in said bank the sum of $10,924.70. When Scott deposited checks issued to him, the bank held those checks in an "uncollects funds" account and did not credit his account until the checks cleared. Between March 4, 1947, and March 17, 1947, several checks which had been given to Scott by various persons, and which Scott had deposited were bad as evidenced by "pink slips" of the bank. In addition, the bank had made Scott a loan and had accelerated payment of this obligation, which was charged to Scott's account in the amount of between $1,800 and $2,000.

Ledbetter, the prosecutor, filed suit in the Circuit Court of Lee County, Alabama, Equity Division, Case No. 2177, styled Dean Ledbetter v. James E. Scott and E. E. Stokley, on April 3, 1947, seeking to recover the automobile in question, or the monetary obligation represented by the check. This suit is still pending in active litigation.

Ledbetter stated that "If I had James (petitioner) in Georgia, I would get my money out of him." About two weeks before he filed his equity suit, Ledbetter declared "I am going to have Scott arrested to collect my money." On the last Thursday in March, 1947, Ledbetter stated that "he (Ledbetter) was going to have his money, or he (Scott) was going to jail." Ledbetter also threatened that if "he (Ledbetter) didn't get his money he was going to have a warrant for the arrest of petitioner and have him extradited," and he threatened the petitioner with: "Boy, I'm going to tell you, if you don't get my money up, you are going to be sorry. I am going to have you arrested. If I can get you back to Georgia, I will make it hot for you."

On hearing in the Court below the petitioner contended his extradition under these facts would be in direct violation of the statutory prohibition contained in Sec-

tion 68, Title 15, Code of Alabama of 1940, and the law as expressed in Hobbs v. State of Tennessee ex rel. State of Alabama, 1942, 30 Ala.App. 412, 8 So.2d 595, certiorari denied Ex parte State, 243 Ala. 102, 8 So.2d 596. The case, as stated, is here on appeal under Section 369, Title 15, Code of Alabama of 1940.

■ A check is essentially commercial paper, possessing the attributes of a contract, and certain characteristics of property, and it is equivalent to a promise to pay upon the part of the drawer. It is executory in its nature. 10 C.J.S., Bills and Notes, § 5; Deal v. Atlantic Coast Line R. Co., 225 Ala. 533, 144 So. 81, 86 A.L.R. 455; Tarrant American Sav. Bank v. Smokeless Fuel Co., 233 Ala. 507, 172 So. 603; Kleinman v. Chase National Bank of City of New York, 124 Misc. 173, 207 N.Y.S. 191, Williams v. Lowe, 62 Ind.App. 357, 113 N.E. 471; First National Bank v. Montgomery Cotton Mfg. Co., 211 Ala. 551, 101 So. 186; Dowling v. Parker, 221 Ala. 63, 127 So. 813.

■ In habeas corpus proceeding to secure release of prisoner held under extradition proceeding, that papers on file presented necessary facts to constitute a prima facie case for holding accused in custody as fugitive from justice does not preclude the Court from looking behind the prima facie case to see whether the warrant of the Governor was issued in a case not authorized by law. State of Tennessee v. Hamilton, 28 Ala.App. 587, 190 So. 306, 308; Hobbs v. State of Tennessee ex rel. State of Alabama, 30 Ala. App. 412, 8 So.2d 595, certiorari denied Ex parte State, 243 Ala. 102, 8 So.2d 596.

■ The criminal extradition chapter cannot be construed as authorizing the extradition of any person in this State to any other State where the extradition proceedings, directly or indirectly, seek to aid in the collection of any debt, demand or claim against the party sought to be extradited. Title 15, Section 68, Code of Alabama 1940; Hobbs v. State of Tennessee ex rel. State of Alabama, 30 Ala.App. 412, 8 So.2d 595, certiorari denied Ex parte State, 243 Ala. 102, 8 So.2d 596; Ex parte Slauson, C.C., 73 F. 66; Work v. Corring-

ton, 34 Ohio St. 64, 32 Am.Rep. 345; Compton, Ault & Co. v. Wilder, 40 Ohio St. 130; State v. Gregg, 68 Ohio App. 397, 40 N.E. 2d 167; In re Extradition of Williams, 5 Ohio App. 55; Commonwealth of Pennsylvania v. Heinz, 141 Pa.Super. 158, 14 A.2d 875; Ex parte Kuhns, 36 Nev. 487, 137 P. 83, 50 L.R.A.,N.S., 507; Ex parte Owens, 34 Okl.Cr. 128, 245 P. 68; Ex parte Maddox, 55 Okl.Cr. 114, 25 P.2d 1111; Ex parte Offutt, 29 Okl.Cr. 401, 234 P. 222; Ex parte Johnson, 55 Okl.Cr. 154, 27 P.2d 171.

Where the governor's warrant recited that accused was charged in Georgia with "the crime of Misdemeanor (bad check)," and the undisputed evidence disclosed that check was returned with the notation "Drawn against uncollectible funds," and that payee has instituted civil or equitable proceedings, which are pending, and has threatened accused with arrest and extradition if money was not promptly paid, and that extradition proceedings were instituted, directly or indirectly, to aid in the collection of such a check, extradition could not be had. Authorities, supra.

This writ of habeas corpus was filed by the petitioner to prevent him from being taken from his home in Alabama in direct violation of Section 68, Title 15, of the Code of Alabama of 1940, which provides as follows:

"Nothing in this chapter shall be construed as authorizing the extradition of any person in this state to any other state where the extradition proceedings, directly or indirectly, seek to aid in the collection of any debt, demand or claim against the party sought to be extradited."

The first question which presents itself for our consideration is the check in question, "a debt, demand or claim" within the terms of Section 68, Title 15, of the Code of Alabama of 1940, and if so, will this request for extradition directly or indirectly aid in the collection of such a debt, or does it seek to do so? If it does, it must be admitted the petitioner should be discharged under the writ because he comes squarely within the provisions of Section 68, Title 15, of the Code of Alabama of 1940.

The check in question was issued by the petitioner on March 4, 1947. The payee held this check for fourteen days before presenting it for payment, and when presented it was returned by the bank with the notation "Drawn against uncollectible funds." Between the date of issuance, and the date the check was presented for payment, the bank had accelerated payment of a loan previously made to Scott by the bank and had charged his account with the amount of the loan, being between $1,800 and $2,000. In addition, Scott had deposited numerous other checks with the bank which were not credited to his account until they were collected by the bank and several of these checks, given to Scott by other persons, were never honored.

Is the check in question "a debt, demand or claim" against Scott? The prosecutor, Ledbetter, is manifestly of that opinion as evidenced by his numerous statements, his threats, and his civil litigation all involving and pertaining to the same check, and the same transaction as that here involved, and in which he seeks to have Scott extradited to aid him in its collection.

In 10 C.J.S., Bills and Notes, § 5 it is observed that:

"A check is essentially commercial paper, possessing the attributes of a contract and certain characteristics of property and it is equivalent to a promise to pay upon the part of the drawer. It is executory in its nature."

The case of Dowling et al. v. Parker et al., 221 Ala. 63, 127 So. 813, 814, is particularly applicable to the instant case. In the Dowling case, a mortgagor, still in possession of a mortgaged mule, negotiated a sale of the mule. By mutual agreement the purchaser made the check for the price payable to the mortgagee. The purchaser took possession of the mule, and when it died, within a few days, he stopped payment on the check. The Supreme Court declared:

"Defendant gains nothing by the fact that a check is deemed a conditional payment—conditioned on its being cashed. It expresses a contract of the drawer to pay, and, if not cashed because of his countermand or other cause not the fault of the payee, a suit lies as on a promissory note or other bill of exchange."

In Deal v. Atlantic Coast Line Railroad Company, 225 Ala. 533, 144 So. 81, 82, 86 A.L.R. 455, a suit on a check by the payee against the drawer, the Supreme Court declared:

"A check is a contract within itself, and imports an obligation or engagement on the part of the drawer to pay the same, if, on due presentation to the bank, payment is refused."

In First National Bank v. Montgomery Cotton Mfg. Company, 211 Ala. 551, 101 So. 186, 188, the Court observed:

"The drawer of this check stands in some respects in similar relation to the payee of the check as the maker of a note to the payee of the note. The maker of the check engages with the payee that on due presentation it will be paid, and, if it be dishonored and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the payee or holder or any subsequent indorser who may be compelled to pay it."

In Williams v. Lowe, 62 Ind.App. 357, 113 N.E. 471, 473, the Court declared that:

"A check is a written contract for the payment of money."

In Smith v. Treuthart, 130 Misc. 394, 223 N.Y.S. 481, 482, the Court defined a check as:

An "acknowledgment of indebtedness and promise to pay."

It is so well established, and universally held that a check is a personal obligation on the part of the maker to pay the debt, or the obligation evidenced thereby, that a further discussion of the point would unnecessarily burden this opinion.

Alabama adopted the uniform criminal extradition act in 1931, General Acts 1931, p. 559. This act has been brought forward as Article II of Chapter 2 of Title 15, of the Code of Alabama of 1940. However, Section 68, of Title 15, of the Code of Alabama of 1940, is not a part of the uniform act. The only reference in the uniform act to the collection of debts is found

in Section 23, Section 71, Title 15, Code of Alabama of 1940, which provides that in demanding extradition the application shall state "that the proceeding is not instituted to enforce a private claim."

This Court has previously had occasion to consider Section 68, of Title 15, and in a case very similar to—in fact almost identical with—the one here pending. In Hobbs v. State of Tennessee ex rel. State of Alabama, 30 Ala.App. 412, 8 So.2d 595, Hobbs was charged "with the crime of feloniously obtaining property by means of a bad check." Hobbs gave a check to a party in Tennessee "accompanied by the statement, that it was not good at the time, but that [he] would 'make it good,' upon his return to Alabama, where he resided." That he never did. In the Hobbs case, supra, this court said:

"So far as we can see the necessary facts, as outlined in the opinion in the case of State of Tennessee v. Hamilton, 28 Ala.App. 587, 190 So. 306, 308 * * * to constitute a prima facie case for holding appellant in custody as a fugitive from justice, were made to appear by the papers on file.

"But here, as in the Hamilton case cited in the preceding paragraph, this fact does not preclude our 'looking behind the prima facie case to see whether or not the warrant of the Governor was issued in a case not authorized by law.'

"And it is definitely the law of our State that 'nothing in this chapter [the chapter dealing with Criminal Extradition] shall be construed as authorizing the extradition of any person in this state to any other state where the extradition proceedings, directly or indirectly, seek to aid in the collection of any debt, demand or claim against the party sought to be extradited.' Code 1940, Title 15, § 68."

In the Hobbs case, this Court reversed and rendered the case, and entered an order discharging the appellant.

In our opinion the case at bar is much stronger, from petitioner's standpoint, than the Hobbs case, supra. Here, the petitioner is charged with "a Misdemeanor (bad check)." In the Hobbs case he was charged with "the crime of feloniously obtaining property by means of a bad check." Here no one contends that Scott had any knowledge—or even that he suspected—the check would not be promptly paid when presented. The undisputed evidence is quite the contrary. Scott admittedly had sufficient funds on deposit in the bank on which the check was drawn to have cashed it on the date it was issued, and for days subsequent thereto. In the case here pending, Ledbetter, the payee, has instituted suit on the transaction in Lee County, Alabama, and has made numerous threats of criminal prosecution and attempts at extradition to force the collection of this debt.

Although not a part of the uniform criminal extradition act, and, therefore, not the subject of general consideration by Courts of last resort throughout the nation, provisions similar to our Section 68 have been the subject of litigation and discussion in other states, and in every case the principle embraced by this Court in the Hobbs case, supra, has been the universal decision of these Courts.

By Section 68, Title 15, of the Code of Alabama of 1940, the responsibility is placed squarely upon the Court to see that no person shall be extradited "Where the extradition proceedings, directly or indirectly, seek to aid in the collection of any debt, demand or claim."

This case has been well briefed by respective counsel. The brief of the Attorney General contains the terse but correct statement as follows:

"The main issue, as it appears to us, is that appellant is making the contention that by virtue of Title 15, Section 68, Code of Alabama 1940, he cannot be extradited from this State to any other State, when such extradition proceedings directly or indirectly seek to aid in the collection of any debt.

"We therefore, submit that the only question presented in this case is a question of fact. If the court is of the opinion that this proceedings was instituted for the purpose of collecting a debt then we readily admit that this case should be reversed and an order made by this court releasing this appellant. However, on the other hand, we

just as strongly insist that if the facts presented to this court do not show that this proceeding was instituted for the purpose of collecting a debt, then this case should be affirmed."

From what has been said, hereinabove, based upon the undisputed facts, we are of the opinion that this proceeding was instituted for the purpose of directly or indirectly seeking to aid in the collection of a debt, demand or claim against the party sought to be extradited. We are further of the opinion that the trial court fell into error and failed to give effect to the statutory provisions of Section 68, Title 15, Code of Alabama 1940.

It appears to us, also, that notwithstanding the adverse decision of the trial court, that from the following incident of the trial as shown by the record, it could reasonably be construed that the court in effect regarded the transaction as being a debt. At the conclusion of taking the evidence, the court propounded two questions to the petitioner, viz: "Have you ever paid for this car?" To which question petitioner replied: "No, sir, I never did; they never gave me a chance." Q. "Young man did you ever make any payment on this check?" Ans: "No sir," and gave his purported reasons for not having paid for the car, or made any payments on the check.

 The language of Section 68, Title 15, of the Code of Alabama of 1940, is clear and explicit. It was passed to preserve and protect the real purpose of rendition statutes, and to protect the process from the evils and private uses to which it was exposed. The legislative intent is clear from the language of the statute. There is no word in it of doubtful import. It is broad in its application, and emphatic in its prohibition. The following underlined words of the statute are all inclusive. They clearly reveal that the Legislature meant this prohibition to have a broad application, to be liberally construed.

"*Nothing* in this chapter shall be construed as authorizing the extradition of *any* person in this state to *any* other state where the extradition proceedings, *directly or indirectly, seek to aid* in the collection of any debt, demand or claim against the party sought to be extradited."

As noted in the above statute, it is not necessary that the request for extradition directly aid the collection of any debt or claim, but only that it seeks to aid in the collection of a claim, not only directly, but indirectly as well.

The judgment of the trial court is reversed, and a judgment here rendered discharging the appellant.

Reversed and rendered.