82 So.2d 439

Cecil HARRIS

v.

STATE.

4 Div. 267.

Court of Appeals of Alabama.

Aug. 30, 1955.

J. N. Mullins, Dothan, for appellant.

Si Garrett, Atty. Gen., and Robt. P. Bradley, Asst. Atty. Gen., for the State.

PRICE, Judge.

This is an appeal from the judgment of the Probate Court of Houston County denying appellant, Cecil Harris, a discharge on habeas corpus and remanding him to the custody of the Sheriff of Houston county to be delivered to the authorized agent of the State of Florida.

The appellant was arrested by the Sheriff of Houston County, Alabama, under a warrant issued by the Governor of Alabama upon a requisition of the Governor of Florida. The warrant of the Governor of Alabama reads in part:

"Whereas, His Excellency, Charley E. Johns, Governor of the State of Florida. By requisition dated the 17th day of March 1954, has demanded of me, as Governor of the State of Alabama, the surrender of Cecil Harris, who, it appears, is charged by affidavit and warrant, in the county of Franklin in said State, with the crime of passing worthless checks, as shown by affidavit and warrant, (a duly certified copy of which affidavit and warrant accompanies said requisition) and it appearing that said Cecil Harris has fled from justice in said State and taken refuge in the State of Alabama."

At the hearing before the probate court appellant sought to show that he was being extradited for the collection of a debt and not for the crime of passing worthless checks. He relies on the provisions of Section 68, Title 15, Code 1940:

"Nothing in this chapter shall be construed as authorizing the extradition of any person in this state to any other state where the extradition proceedings, directly or indirectly, seek to aid in the collection of any debt, demand or claim against the party sought to be extradited."

Appellant testified in his own behalf as follows:

"My name is Cecil Harris and I am the petitioner in this case. I know Alton Bradley who lives in Apalachicola, Fla. I gave him the check dated August 23, 1953, in amount $439.26. I began to haul fish for him and myself from Apalachicola Fla., to Dothan, Ala., in the month of April or May, 1953. I saw I was going in the hole and told him I would quit. He asked me what I could do about what I owed him. He wanted me to give him a check. I told him I did not have any money in any bank. He said for me to give it to him to hold as security, and I could pay him along on it. I then gave him the check. This was in August, 1953. After I gave him the check I hauled crabs for him for several weeks from Apalachicola to Tampa, Fla. I saw I could not make any money at that and I came back home to Dothan, Ala. Since I gave him the check I have paid him on it $120.00 at one time and $25.00 at another time. I owe him the money and want to pay him but I could not get the money."

Appellant's father, J. I. Harris, testified that he heard Alton Bradley ask appellant to give him a check for what he owed him; that appellant told Bradley that he did not have any money in any bank; that Alton Bradley then told appellant to give him the check to hold as security and appellant could pay along on it; that appellant worked for Bradley about two months after he gave him the check.

Herbert O. Marshall, Sheriff of Franklin County, Florida, testified in response to a question by defense counsel that he told one of the deputies of Houston County that he did not want to take Cecil Harris back to Florida; that the only thing he wanted was for him to pay that debt.

Sheriff Marshall further testified that "Cecil Harris owed Alton Bradley another check or two checks and an open account also"; that the total was about $670 and "that they did not want to hurt Cecil Harris but that the only thing they wanted was for him to pay that debt"; that "Alton Bradley's property might be selling at public auction today as he would certainly have to raise some money all on the account of the fact he had trusted people like Cecil Harris"; that Cecil Harris had paid $120 on the debt after giving the check and had given him (Marshall) a $25 money order to apply to further payment on the debt.

The record shows that at the close of the testimony the judge announced that he would give Cecil Harris until 3:00 o'clock that afternoon to pay the debt or make arrangements for payment; that if he failed to do one or the other, the judge would, at 3:00 P.M., deny the writ of habeas corpus and remand Harris to the custody of the sheriff.

At 3:00 P.M. the judge asked Sheriff Marshall if any settlement had been made, and Mr. Marshall answered, "No." Thereupon the judge made and entered an order denying the writ and remanding appellant to the custody of the Sheriff of Houston County.

It appears to be conceded by appellant that the documentary evidence pre-sented by the State established a prima facie case for holding the appellant as a fugitive from justice. But the fact that the State's evidence made a prima facie case for the detention of appellant does not preclude our looking behind the prima facie case to see whether or not the rendition warrant of the governor was issued in a case not authorized by law. State of Tennessee v. Hamilton, 28 Ala.App. 587, 190 So. 306; Hobbs v. State of Tennessee ex rel. State of Alabama, 30 Ala.App. 412, 8 So.2d 595, certiorari denied 243 Ala. 102, 8 So.2d 596.

The only question before this court is whether or not the evidence presented at the habeas corpus hearing in the court below establishes that the extradition proceedings were instituted for the purpose of collecting a debt, in violation of Section 68, Title 15, Code 1940.

The case of Stubblefield v. State, 35 Ala. App. 419, 47 So.2d 662, 663, is conclusive authority for the reversal of the case at bar. In that case the petitioner was a used car dealer in Alabama. In November, 1949 he went to Chicago and purchased two used automobiles from one Fry, the prosecuting witness, for the price of $2,445. Petitioner told Fry at the time that he did not have that much money in the bank and Fry replied that he would take his check. Petitioner gave his check for the purchase price and in a few days paid to Fry $1,175. On December 1, 1949, the petitioner received a letter from Fry demanding payment of the balance not later than the 3rd of December, 1949. Presiding Judge Bricken held that "from the foregoing and other facts of like import, we are of the opinion that this proceeding (an attempt to extradite petitioner) is clearly within the inhibition of Title 15, Section 68 of the Code of Alabama 1940 * * *."

The undisputed facts in the case at bar show that the appellant gave the prosecuting witness a check to hold as security, telling him at the time that he did not have money in the bank to cover it; that the prosecuting witness, Alton Bradley, said that he would accept the check as security and appellant "could pay him along on it";

287

that after his return to Alabama the appellant made a partial payment of the debt.

It further appears that although the court below denied appellant's writ of habeas corpus he also regarded the transaction as being a debt. See Scott v. State, 33 Ala.App. 328, 333, 33 So.2d 390.

■ It conclusively appears from the evidence presented at the hearing in the court below that these extradition proceedings were instituted for the purpose of collecting, directly or indirectly, a debt owed by the appellant to the prosecuting witness. This being the case, the governor's rendition warrant was issued in a case not authorized by law. Title 15, Section 68, Code 1940; Stubblefield v. State, supra; Hobbs v. State of Tennessee ex rel. State of Alabama, supra; Scott v. State, supra.

It is our opinion that the judgment of the lower court should be reversed and a judgment rendered in this court discharging the appellant from further custody in this proceeding. It is so ordered.

Reversed and rendered.