James Lewis Shubert and Sidney R. Madden were separately indicted for theft of property. Their cases were consolidated for trial and both men were convicted. Madden's sentence of four years' imprisonment was suspended and he was placed on five years' probation. Shubert was sentenced to four years' imprisonment.
Each defendant was indicted for the same offense. The charge contained in the indictments was that each defendant
 "did by deception knowingly obtain or exert unauthorized control over, to wit: $10,000.00, the property of, to-wit: THOMAS BURKE d/b/a CONSOLIDATED ENERGY RESOURCES, INC., of the total value of, to-wit: $10,000.00, with the intent to deprive the owner thereof, or did aid and abet in said act, . . ."
The State's evidence shows that, in April of 1981, Thomas Burke, Sidney Madden, and John Toth, Burke's uncle, formed Consolidated Energy Resources of Alabama, Inc. (CER), a corporation established to purchase and sell coal. Madden had his own corporation, Associated Fuels, Inc. (Associated), which obtained a surface and mineral mining lease to property owned by Leon W. and Dore E. Bishop in Franklin County (the Bishop property).
In October of 1981, Associated and CER entered into an agreement to mine the Bishop property. Associated would provide the leased mining rights in exchange for financing by CER. Burke, on behalf of CER, obtained a $50,000 loan to finance and mine the Bishop property. James Shubert, who allegedly had "extensive coal experience," was to "act as a supervisor on the property." Shubert also had his own corporation, H. S. Coal Company.
In order to mine the Bishop property, a tractor and a bulldozer were required. Burke gave Madden and Shubert a signed but uncompleted check on the CER account with which to lease this equipment for $10,000 from Scribner Equipment Company in Mississippi. Burke testified to the effect that Madden and Shubert understood that this equipment was to be leased or contracted for in the name of CER.
Madden and Shubert took the check, which Madden completed for $10,000, and leased the equipment as agreed. However, the equipment was leased to or contracted for by Associated and H. S. Coal instead of CER. The tractor and bulldozer were delivered to the Bishop property and used in the mining of coal. Madden and Associated received the proceeds from the sale of that coal. Burke did not receive any money from the sale of the coal.
Madden testified in his own defense and stated that he shipped 457 tons of coal off of the Bishop property and received $10,133.40, which he used to pay his expenses incurred in mining the property. None of the proceeds went back into CER. Madden stated that the equipment contract was obtained by Associated and H. S. Coal because he and Shubert had to personally guarantee the $422,000 equipment contract in order to obtain the tractor and bulldozer. *Page 46 
Here, there was a fatal variance between the indictment charging that the defendants stole "$10,000" and the proof that if anything was fraudulently taken it was a check for $10,000.
A fatal variance exists between an indictment alleging the theft of "lawful currency" and evidence showing the theft of several checks. "[W]hen in this case the charge involved `currency' and the evidence established `checks,' this was a fatal variance." Ex parte Airhart, 477 So.2d 979, 980-81 (Ala. 1985); Airhart v. State, 388 So.2d 211, 212-13 (Ala.Cr.App.), cert. quashed, 388 So.2d 213 (Ala. 1980) (proof that a check was embezzled is insufficient to satisfy the allegation of an indictment charging the embezzlement of "lawful currency").
 "Such a variance in allegation and proof is fatal and could have easily been avoided by a simple use of the disjunctive `money or checks' in the indictment. Evans v. State, 343 So.2d 557 (Ala.Cr.App. 1977). In so ruling we make no new announcement concerning variance in proof and allegation, nor do we impose a standard of technicalities void of logic and necessity. Our decision today simply reaffirms long standing principles enunciated by well reasoned authority. Because of the deficiency herein pointed out we have no alternative but to reverse and remand this cause." Airhart, 388 So.2d at 213.
Additionally, the indictment in this case was "bad" because it merely alleged the theft of "to-wit: $10,000.00, the property of to-wit: THOMAS BURKE" without further description of the property taken.
 "The indictment in this case is bad. It should have averred the number and denomination of the coins, or of some of them, or that the same were to the grand jury unknown. Such have been the rulings of this court; and, as this requirement is both reasonable and easily conformed to, we are unwilling to depart from it. State v. Murphy, 6 Ala. 845; DuBois v. State, 50 Ala. 139; Grant v. State, 55 Ala. 201; Whart.Crim.Pl. § 218." Burney v. State, 87 Ala. 80, 6 So. 391, 392 (1889) (two-count indictment describing property as "two hundred dollars in gold coin of the United States" and "two hundred dollars").
Reed v. State, 88 Ala. 36, 6 So. 840 (1889) (indictment charging theft of "three dollars and sixty cents in money of the United States of America" is "defective and insufficient in not stating the number and denomination"); Grant v. State,55 Ala. 201, 208 (1876) ("The indictment [for larceny] must also, state the kind and description of the goods stolen. If the larceny is of coin, the number and denomination must be stated. . . . When the species and denomination of the coin are unknown to the grand jury, the fact may be averred, and a general description, as so many dollars in gold, or in silver coin, will be sufficient."); Croker v. State, 47 Ala. 53, 57 (1872) (The description of money in the indictment as "ten dollars in money of United States currency" was "too indefinite. The term `currency,' when applied to the medium of trade, means equally coin, bank notes, or notes issued by the government."); Statev. Murphy, 6 Ala. 845, 851 (1844) ("[T]he law requires the denomination and number of coin to be stated in the indictment."). See also Levy v. State, 79 Ala. 259 (1885);Edwards v. State, 379 So.2d 336 (Ala.Cr.App. 1979), cert. denied, Ex parte Edwards, 379 So.2d 339 (Ala. 1980). This specific principle is expressly noted in § 15-8-5, which directs that "words used in an indictment must be construed in their usual acceptation in common language." See Wilkerson v.State, 23 Ala. App. 520, 128 So. 777 (1930).
The proper form for an indictment for theft by deception under § 13A-8-3 is found in the Indictment and Warrant Manual
prepared by the Alabama Law Institute and the Alabama Office of Prosecution Services at pp. 8-1 and 8-1 (a). Although there are two alternative forms provided for a charge of theft by deception, each of those alternatives begins, "A.B. did knowingly obtain, by deception, control over (description ofproperty), . . ." Every *Page 47 
indictment form for theft of property contains the same "(description of property)" requirement.
"Obviously, a check is not money," and in an indictment, an allegation of conversion of money will not cover a conversion of a check. Carr v. State, 104 Ala. 43, 16 So. 155, 160 (1894). See also United States v. Fernando, 745 F.2d 1328, 1330 (10th Cir. 1984) ("[S]tate courts have interpreted `money' . . . as not including checks."). "The word `dollars' imparts to the common understanding, the meaning of a thing of value," and the indictment must "designate the kind of dollars stolen." Leonardv. State, 115 Ala. 80, 22 So. 564, 565 (1897). "A check is a written order, or request, for the payment of money, addressed to a bank or banker." Thompson v. State, 49 Ala. 16, 18 (1873). "A check is essentially commercial paper, possessing the attributes of a contract, and certain characteristics of property, and it is equivalent to a promise to pay upon the part of the drawer. It is executory in its nature." Scott v.State, 33 Ala. App. 328, 330, 33 So.2d 390 (1948). "A check is a contract." Gooch v. State, 249 Ala. 477, 479, 31 So.2d 776
(1947).
The indictment used a "dollar sign" in describing the property, which is "[t]he symbol ($) for a dollar or dollars when placed before a numeral." The American Heritage Dictionaryof the English Language 389 (1969); Webster's Third NewInternational Dictionary 670 (1971). A "dollar" is "[t]he basic monetary unit of the United States, Australia, Canada, Ethiopia, Guyana, Liberia, Malaysia, New Zealand, Trinidad and Tobago, Western Samoa, and of Hong Kong and Singapore, equal to 100 cents," with the rates of exchange and equivalence in U.S. dollars differing. American Heritage 389. A "dollar" is "1: an old German taler coin 2: any one of a number of coins of various countries patterned after the taler: . . . 3a: the basic monetary unit of the U.S. serving as a medium standard, or basis of foreign exchange. . . ." Webster's 669.
It is fundamental that an indictment must state the facts constituting the offense in ordinary and concise language, . . . in such a manner as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment." Alabama Code 1975, § 15-8-25. "Indictments cannot be aided by intendment, but must positively and explicitly state what the prisoner is called upon to answer." State v. Seay, 3 Stew. 123, 130-31 (Ala. 1830).
From the indictment in this case, it cannot be ascertained whether the defendants were charged with stealing United States currency, a check, or coal. This issue was brought to the attention of the trial court and sufficiently preserved for review by the filing of a "motion for preliminary hearing or conference to determine basis for offense as set forth in the indictment."
Because the variance between the indictment and the proof is material, Ex parte Airhart, 477 So.2d at 981; House v. State,380 So.2d 940, 943 (Ala. 1979); Airhart, 388 So.2d at 212-13, and because the indictment failed to sufficiently describe the property allegedly taken, the judgment of the circuit court as to both defendants must be reversed and this cause remanded. It should be noted that there are other allegations of error raised on appeal which give this court serious cause for concern. However, because of our findings, we need not reach those additional issues.
REVERSED AND REMANDED.
All Judges concur. *Page 48