TYSON, Judge.
Claudious D. Wallace was indicted for theft of property in the second degree, in violation of § 13A-8-4, Code of Alabama 1975. The jury found the appellant “guilty as charged in the indictment.” The appellant was sentenced to one year and one day in the State penitentiary. The sentence was suspended and the appellant was placed on two years’ supervised probation.
On January 30, 1987, and February 2, 1987, Kathy East, Lynn Donaldson, Dot Lee, Donna Floyd, Cheryl Pennington, and the appellant were employed as clerks in the probate office of Pike County, Alabama.
Ms. East was the chief clerk and her duties included making bank deposits and balancing all reports. Each clerk had her own money bag which included all cash and checks collected during that day. At the end of the day the clerks used an adding machine to total all the cash and all checks collected. Their total on the adding machine should equal the total amount of money collected. The money and the receipts were placed in each clerk’s money bag and placed in the vault in the Judge of Probate’s office.
The probate office usually provided counter checks for the customers who forgot to bring their checks. A counter check is a nonpersonalized check with no account number on the check.
At the close of the business day on Friday, January 30, 1987, Donaldson, Lee, Floyd, and the appellant each totalled up her receipts for the day and placed the money in her individual money bag. The bags were then placed in the probate vault, which was locked at the close of the day.
On Monday, February 2, 1987, Donaldson arrived at 7:59 a.m. Donaldson removed the four cash bags from the vault and placed them in her top right drawer. She then clocked out to take her daughter to school.
East testified that on Monday morning when she checked Donaldson’s bag, she discovered that some cash was missing and two counter checks that had not been run through the cash register. The counter checks were blank on the “pay to the order of” line.
One of the counter checks was for $280, allegedly signed by “Joe B. Allen.” The other check was for $270, allegedly signed by Mary P. Davis. Both signatures were subsequently determined to be forgeries. Mr. Allen and Mrs. Davis had written personal checks to the probate office on January 30, 1987, for $24.25 and $48.50, respectively. These checks were received by Donaldson.
While looking for her calculator tape for January 30, 1987, Donaldson found another counter check in appellant’s trash can. This counter check was written in the same manner as the other counter checks.
Donaldson’s calculator tape was used to determine the amount of money missing from Donaldson’s bag. The calculator tape reflected that several checks for $48.25 and a check for $24.25 were collected on January 30, 1989. Neither the $270 check nor the $280 check was listed on the calculator tape.
Grady Reeves, the police chief of Troy, Alabama, conducted an investigation of the forged checks and the missing cash. Reeves took handwriting specimens from each of the five employees of the probate office.
Dr. Richard Roper, a criminalist with the Alabama Department of Forensic Sciences, reviewed the documents and determined that all three of the counter checks were written by the appellant.
*1074 Sue Lynn Brown, custodian of records for the Pike County Bank, testified that a February 10, 1987, bank statement showed that the appellant’s joint account with her husband was overdrawn. She also testified that on February 2, 1987, a $455 deposit was made into the appellant’s account.
I
The issue on appeal is whether a fatal variance existed between the indictment and the proof presented at trial. The indictment charged that the appellant:
“did knowingly obtain or unauthorized control over $550.00 lawful currency and/or coinage of the United States of America, a better description of denominations of which to the Grand Jury is otherwise unknown, the property of Pike County, Alabama, of the value of $550.00, with the intent to deprive the owner of said property, in violation of § 13A-8-4 of the Code of Alabama.”
In United, States v. McCrary, 699 F.2d 1308 (11th Cir.1983), the court sets out a two step analysis required for reviewing a claim of variance in an indictment: (1) was there in fact a variance and (2) was the variance prejudicial.
“A variance exists where the evidence at trial proves facts different from those alleged in the indictment, as opposed to facts which, although not specifically mentioned in the indictment, are entirely consistent with its allegations.” United States v. Champion, 813 F.2d 1154, 1168 (11th Cir.1987) citing United States v. Gold, 743 F.2d 800, 813 (11th Cir.1984), cert. denied, 469 U.S. 1217, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985).
The appellant contends a fatal variance existed because the State proved forgery and not theft of lawful currency or coinage of the United States, as stated in the indictment. Appellant relies on Ex parte Airhart, 477 So.2d 979 (Ala.1985), Shubert v. State, 488 So.2d 44 (Ala.Cr.App.1986), and Henderson v. State, 520 So.2d 169 (Ala.Cr.App.1987), to support her contention that, if an indictment charges theft of currency and the evidence shows a theft of check, then a variance exists.
The cases cited by the appellant are clearly distinguishable from the present case. Ex parte Airhart and Shubert involve an indictment for theft of lawful currency. Henderson involves an indictment for theft of a specified sum of money. The proof in all of these cases showed an unauthorized control of checks. There is no proof in any of these cases that cash money was taken.
In the present case there was testimony that cash was missing.
During direct examination of East the following transpired:
“Q. Now, what about cash? Did you count the cash?
“A. I counted the cash.
“Q. Was there a difference between the amount of cash that had been there on Friday afternoon and the amount of cash there on Monday morning?
“A. Yes.
“Q. What was that difference?
“A. It was the difference of — the cash I got and the cash she got?
“Q. Yes.
“A. Was $610.
“Q. How much short on — how did you determine that you were short on cash?
“A. It wasn’t there. It just — it was gone.
“Q. How did you know how much was supposed to be there?
“A. Oh, by her tape.
“Q. And on her tape, how much cash was supposed to be there?
“A. $2,183.04.
“Q. All right. And you said that you found how much cash in there?
“A. $1,573.04.
“Q. So, you found how much cash missing then, the difference between those two?
“A. Right.
“Q. $610?
“A. Right. I assumed at first maybe— (Testimony of East — R. 54-56).
East’s testimony clearly established that cash money was taken from the probate office.
*1075 Applying the definition of “variance” as stated in Champion, to the present case, we find that no variance existed. The indictment charged this appellant with theft of lawful currency, and the evidence established theft of currency. The evidence relating to the forgery of the check is consistent with the theft of lawful currency and is, therefore, not a fatal variance.
We find no reversible error. The judgment of the trial court is due to be, and the same is hereby, affirmed.
AFFIRMED.
All the Judges concur.