*223 KELLUM, Judge,
concurring specially.
I reluctantly concur with the majority’s decision to uphold the circuit court’s dismissal of the indictments against Mitchell Roffler and Michelle Roffler, based on the circuit court’s conclusion that the indictments returned against the Rofflers suffered from a fatal variance. I write specially, however, to express my concern regarding the trend in Alabama law to find a fatal variance when the State fails to include in an indictment alleging the theft of funds the particular method by which those funds were received, i.e., by cash, by check, through credit-card transactions, or through debit-card transactions.
In the instant case, the Rofflers were charged in separate 23-count indictments charging each of them with theft of property. Each count of the indictments listed a victim’s name and a dollar amount associated with that count of theft; however, the indictments did not include the means by which the Rofflers received the funds. During a hearing on the Rofflers’ motions to dismiss, the State represented that the evidence would establish that the Rofflers had received some of the funds by cash, some by check, and some by debit-card transactions. Because no distinction was made in the 23-count indictments between theft by cash, check, or debit card, the circuit court dismissed the indictments, with prejudice.
In dismissing the indictments against the Rofflers (C. 74-85; 164-175), the circuit court’s frustration is apparent:
“The Court is presented with a number of citizens, customers of [Mitchell Roffler’s[1]] business, who paid out good money or other funds for the purchase of furniture and never received it. These citizens have waited almost three years for some sort of relief from the criminal courts.
“On the other hand, [Mitchell Roffler] has lived under the heavy weight of a multi-count indictment for theft, presumably waiting for this week to be exonerated for theft.
“The Court is called upon to rule whether this multi-count indictment should be dismissed as being void since it fails to properly describe the property stolen as required by Alabama law.
“Each count in the indictment is identical, except for the amount allegedly taken and the victim’s name. However, the facts surrounding each count are uniquely different. Some victims allege cash was stolen, some allege cash and checks, some allege cash only, some allege electronic payments of some sort were stolen.
[[Image here]]
“... I have the legal obligation to follow rulings or precedent as handed down by the Alabama Supreme Court and Alabama Court of Criminal Appeals. The appellate courts in Alabama have held for over 100 years that typographical errors such as a misspelling in the indictment, the incorrect date or time, or the wrong address are not fatal mistakes in an indictment and can be corrected.
“But these same courts have also held, back to the 1880’s that when an indictment alleges cash is stolen it must use a term such as ‘$10,000 in lawful United States currency.’ The phrase ‘$10,000’ is not legally insufficient. Shubert v. State, 488 So.2d 44 (AIa.Cr.App.1986). When an indictment alleges that ‘$10,000 in lawful U.S. currency’ has been stolen *224 and in reality a check in that amount had been stolen, the indictment is fatally defective. Delevie v. State, 686 So.2d 1283 (Ala.Cr.App.1996).
“The State urged the Court to let the trial commence and allow them to present their case. The Court was inclined to do this yesterday, until a full analysis of the law could be had. But no amount of testimony can correct a fatally flawed indictment.”
(C. 75-78.)
Although the circuit court relied upon this Court’s decisions in Shubert v. State, 488 So.2d 44 (Ala.Crim.App.1986), and Delevie v. State, 686 So.2d 1283 (Ala.Crim.App.1996), those decisions — as well as numerous others — were, in turn, based upon the Alabama Supreme Court’s decision in Ex parte Airhart, 477 So.2d 979 (Ala.1985). This Court is bound by decisions of the Alabama Supreme Court, see § 12-3-16, Ala.Code 1975, and “is without authority to overrule the decisions of [that] court.” Jones v. City of Huntsville, 288 Ala. 242, 244, 259 So.2d 288, 290 (1972). Thus, we have no choice; we must uphold the circuit court’s dismissal of the indictments.
In my opinion, the finding of a fatal flaw in an indictment that alleges the theft of specific amounts of money without alleging the method by which those funds were received demonstrates an antiquated approach in the law that fails to take into account the significant changes in banking over the past several decades. Although such a distinction might have been essential in the past, in light of today’s technology, I believe that it should not be necessary for a theft indictment to identify the method by which the funds were received. Such a requirement elevates form over substance and is nonsensical. Because the decisions relied upon to reach the holding in this case predate 21st-century technology, the victims in this ease will forever be deprived of the money or other funds they used to purchase furniture they never received.[2] Likewise, these same decisions prevent the Rofflers from being held accountable for their reprehensible conduct. The Supreme Court should revisit its holding in Ex parte Airhart at its earliest convenience in order to prevent injustices such as this from occurring in future cases.

. The circuit court entered a virtually identical order dismissing the indictment against Michelle Roffler.

. As best as can be determined, counts 1, 4, 9, 12, 19, 21, 22, and 23 were previously dismissed upon motion of the State. According to the indictments, the amount of the remaining victims’ losses totaled $25,476.75.